PRENTISS D. CHENEY

*v.*

N. D. RICKS *et al.*

*Opinion filed November 1, 1897.*

168  533
174  251
74a  228

168  533
s187  172

168  533
d106a⁷526

168  533
e211  601
e211  609

1. SPECIFIC PERFORMANCE—*when specific performance will not be decreed.*  Specific performance of a contract to purchase land executed by the owner to the complainant, the owner's son-in-law, will not be decreed where it clearly appears that the complainant had never treated the contract as in force, but had held possession with his wife under a provision of her father's will devising to her a life interest in the lands, with remainder to her children.

2. ESTOPPEL—*one obtaining a decree in accordance with his bill for partition is bound thereby.*  One who obtains a decree awarding to him, upon his own application, an interest in lands in accordance with the allegations of his bill for partition, is estopped from asserting other rights in the lands based upon a claim of title wholly irreconcilable with that upon which the decree was rendered.

3. PARTIES—*a mortgagee is a necessary party to a partition suit.*  Under sections 5 and 6 of the Partition act (Rev. Stat. 1874, p. 750,) a mortgagee is a necessary party to a suit for partition of lands embracing those covered by the mortgage.

4. PARTITION—*decree should set forth and conserve the interests of all parties.*  In partition proceedings the court should, by its decree, set forth the rights, titles and interests of all the parties, and should so direct partition as to conserve the interests of all the parties in interest.

5. SAME—*when statute operates to transfer lien of mortgage.*  The provisions of section 24 of the Partition act (Rev. Stat. 1874, p. 751,) operate to transfer the lien of a mortgage to the part of the mortgaged premises assigned to the mortgagor only when the share of such mortgagor is assigned to him in severalty.

6. SAME—*mortgaged portions of a tract to be partitioned should be treated as distinct parcels.*  Where portions of a tract of land sought to be partitioned are mortgaged, the court, in its decree, should treat the lands covered by the mortgages as distinct parcels, and should direct partition of each parcel to be made between the owners thereof.

7. SAME—*when solicitor's fee should not be apportioned as costs.*  A complainant in partition who acts as attorney for himself and the other complainants in conducting the case, is not entitled to have his fee for services taxed as costs and apportioned ratably among all the parties to the suit.

APPEAL from the Circuit Court of Christian county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This was a bill in chancery. brought by appellees, against Prentiss D. Cheney and others, praying that partition be made of a number of tracts of land in Christian county, aggregating 5481 acres, which, as the bill alleged, were owned by the said complainants and the said Prentiss D. Cheney as tenants in common. The bill charged that the lands were originally owned by one Dr. Edward A. D'Arcy, who died April 25, 1863, leaving a will, which contained a clause devising the lands, as follows:

"*Fifth*—I hereby give the fee simple of all the various pieces or lots of land owned by me in Christian county, Illinois, to my grandchildren, whatsoever number they may be, born of the bodies of my two daughters, called Caroline and Catherine, (commonly,) share and share alike, to take possession only after the death of my said daughters Ann Caroline D'Arcy, now the wife of Frederick H. Teese, of Newark, New Jersey, and Catherine McEowen D'Arcy Cheney, which (my two daughters) shall have full use and enjoyment, in possession, of all said lands in said Christian county during their natural lives."

The bill further charged that said Caroline intermarried with one F. H. Teese and had born to her two daughters, Mary M. Teese and Catherine M. Teese; that said Catherine D'Arcy intermarried with the defendant, Prentiss D. Cheney, and there was born of that marriage three children, Edward D., Alexander M. and Catherine T. Cheney; that said Edward D. Cheney died June 28, 1865, and said Catherine T. Cheney May 26, 1877, and Mrs. Cheney departed this life April 23, 1877; that said Alexander M. Cheney, upon arriving of age, conveyed all his interest in the lands to the said defendant, Prentiss D. Cheney; that said Caroline Teese, her husband, F. H. Teese, and their two daughters, conveyed all their interest in the lands mentioned in said will to the com-

plainants, thus, as the bill alleged, vesting the title to the said lands in the complainants and the said Prentiss D. Cheney, as tenants in common, in the following proportions, viz., the complainants an undivided two-fifths and the said Prentiss D. Cheney an undivided three-fifths in said lands.

The defendants to the bill made answer, in substance admitting the allegations thereof, except as to certain tracts of land in sections 2, 3, 10 and 11, in township 11, range 4, west of the third principal meridian, the excepted tracts containing 1920 acres. As to the said 1920 acres the answer averred that the defendant, Prentiss D. Cheney, became the owner thereof by virtue of an agreement entered into May 13, 1862, with the said Edward A. D'Arcy, which article of agreement was in words and figures as follows, to-wit:

"This article of agreement, made this 13th day of May, 1862, showeth that Edward A. D'Arcy does this day rent unto Prentiss D. Cheney all those certain pieces or parcels of land lying in the county of Christian, in the State of Illinois, known and described as all of section two (2), all of section three (3), the north half of section ten (10) and the north half of section eleven (11), all in township eleven (11), north of range 4, west of the third principal meridian, containing 1920 acres of land, be it the same more or less, for the space of thirty years from this date, for the use of which land the said Cheney hereby covenants to pay the said D'Arcy or his order, at his residence in Jerseyville, Jersey county, Illinois, at the end of each year from this date that said Cheney may have possession and use of said land, the sum of $576, as well as all the taxes now due on said land and all the future taxes on said land as they may become due, as rent for said land. And in case the said Cheney neglects or refuses so to pay all the taxes as they may become due, as well as the said other yearly rent of $576 for each year that said Cheney has the use of said land, as aforesaid, at the end of each such year from this date as aforesaid, then the said Cheney hereby binds himself and his legal representatives to give up peaceable possession of all the said lots or parcels of land whenever a demand is made therefor by said D'Arcy or his order, without any further or previous notice than is contained in these presents,

and to forfeit all claim to all of the rights and to all of the privileges granted in this lease, in law as well as in equity, and also to forfeit all of the rights in law as well as all the rights in equity granted in the following bond for a warranty deed for said lots or parcels of land. And also the said Cheney is hereby equally bound to pay all or any of said so neglected or refused to be paid rents, as aforesaid, together with six per cent per annum on the amount of said unpaid rents, to be added thereto as damages for non-payment of said rents when due, for which payments as above stated the said D'Arcy hereby binds himself to sustain the said Cheney in the full use, occupancy and enjoyment of all of said lots or parcels of land for the space of thirty years from this date, as aforesaid. And it is further agreed, that in case the said Cheney has not forfeited his rights to the above lease or bond for a warranty deed, as aforesaid, should choose to, at the end of thirty years from this date or prior thereto, shall pay $9600, the unpaid balance which he hereby contracts and agrees to pay, and after paying all of the taxes that may be due or even assessed on said land and all of the money rent as aforesaid, pay duly and truly the said D'Arcy or his heirs $9600, the unpaid part of $10,000, the full purchase price $400 being now paid, then the said D'Arcy hereby binds himself and his legal representative to give unto the said Cheney a warranty deed for all of said lots or parcels of land, each binding himself to the faithful performance of the above contract or make good all damages. As witness our hands and seals.

"In presence of             P. D. CHENEY, [Seal.]
    M. D. ROBBINS.          E. A. D'ARCY. [Seal.]"

It is further alleged in said answer that the said defendant, Prentiss D. Cheney, when the agreement was entered into, paid the sum of $400 and entered into possession of the lands therein described during the period of time stipulated in such agreement, and at the end of such period offered to pay the remainder of such purchase price to the executor of the said Edward A. D'Arcy.

Said Prentiss D. Cheney, by leave of the court, exhibited a cross-bill, in which he averred that Edward A. D'Arcy was, on the 13th day of May, 1862, the owner in fee of all the land described in the original bill, and on that day entered into the written contract hereinbefore set forth, to convey and sell to him the tracts in sections

2, 3, 10 and 11, aggregating 1920 acres. The cross-bill further averred, that since April 23, 1882, said Cheney had the actual, open and notorious possession of the said 1920 acres by virtue of said contract, and that said possession was well known to the complainants in the original bill; that said Cheney paid all taxes on the lands as he was required to do by his contract, and made payments to the executor of the said D'Arcy on account of the said contract, and expended large sums of money in erecting dwelling houses, barns, fences, digging wells and ditches and putting in tiling on said land, and at the end of the period of thirty years specified in the contract, elected to pay the amount due on said contract, and tendered the same to the administrator with will annexed of the deceased. The prayer of the cross-bill was that the said contract should be specifically enforced on payment of any amount due thereon, and that said Cheney be invested with full title to said land.

The complainants in the original bill filed an answer to the cross-bill, in which they denied all knowledge of the said agreement between E. A. D'Arcy and said Cheney for the conveyance of said land, and denied that Cheney had ever held possession under such supposed agreement, but, upon the contrary, had abandoned all right and claim thereunder, and held possession of the same, together with his wife, under the claim of the wife as one of the heirs and devisees under the will of the said D'Arcy; that he failed to make payments as required by the said contract, and that the contract had long before become inoperative and of no force and effect.

The cause was referred to the master in chancery for proof, and finally submitted to the court upon the proof taken and reported by the master, and a decree entered dismissing the cross-bill and granting the relief prayed in the original bill and appointing commissioners to make the partition. The complainant in the cross-bill prosecuted this appeal to this court.

PALMER, SHUTT, HAMILL & LESTER, (JOHN G. DREN-NAN, of counsel,) for appellant.

JAMES B. RICKS, and W. M. PROVINE, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The court correctly refused to decree specific performance of the agreement between Dr. E. A. D'Arcy, deceased, and the appellant, Prentiss D. Cheney. This agreement was executed on the 13th day of May, 1862, and at the same time a similar agreement, relating to other tracts of said land, was entered into between said D'Arcy and F. H. Teese, husband of another daughter of said D'Arcy. The wife of the appellant, Cheney, and Mrs. Teese were the only children of D'Arcy, and while these agreements are in form contracts for the sale and conveyance of the lands mentioned in them, respectively, we think it very clearly appeared from the circumstances in proof, considered in the light of the relationship of the parties, that the primary purpose of the execution of the agreements was to arrange a disposition of so much of the property of D'Arcy for the benefit of his children. Nothing was done under either of these contracts prior to the death of said Dr. D'Arcy, which occurred April 25, 1863. He left a will, the fifth clause of which provided for a different disposition of the lands mentioned in these contracts. Under the provisions of this will the title to the lands vested in the children of Mrs. Cheney and Mrs. Teese, subject to the life estate created by the will in Mrs. Cheney and Mrs. Teese.

In November, 1863, a few months after the death of Dr. D'Arcy, the appellant, Cheney, Catherine, his wife, F. H. Teese, and Caroline, his wife, in view of the provisions of the will of said D'Arcy, entered into an agreement in writing partitioning and allotting to Mrs. Teese and Mrs. Cheney said lands in severalty during the duration of the lives of the said life tenants under the will.

This agreement also recited that one of the purposes of its execution was that of indemnifying the "said P. D. Cheney and F. H. Teese for any outlay they may make or be put to in taking care of, cultivating or improving said lands during the lifetime of their respective wives." As a means of compensating said husbands for any such outlays, the agreement provided that in the event of the death of Mrs. Cheney during the lifetime of Mrs. Teese, said appellant, P. D. Cheney, or his assigns, should have and hold the premises allotted to Mrs. Cheney for a period of five years after the death of said Mrs. Cheney, and the same provision was made in the agreement for the protection of Teese in the event of the death of his wife.

The appellant, Cheney, acting for and on behalf of himself and his wife, under the provisions of this contract of partition and pursuant to the will of the father of his wife, entered into possession of the lands allotted to his wife, which included the 1920 acres in controversy in this proceeding. He remained in possession in the same capacity during the lifetime of his wife. Mrs. Cheney died April 23, 1877, and, as was his right to do under the contract with Mr. and Mrs. Teese, appellant, Cheney, retained possession of the premises allotted to his wife, for a period of five years thereafter. Soon after the expiration of that period, appellant, Cheney, as complainant, in his own behalf and also in the capacity of next friend for Alexander M. Cheney, his son, filed a bill in chancery to the November term, 1882, of the Christian circuit court, in which he alleged that said E. A. D'Arcy died seized of the various tracts of land mentioned in complainant's bill in this cause, and including the 1920 acres described in the agreement or contract executed to him for the sale of the land. The bill further alleged that said D'Arcy died testate, and set forth in *hæc verba* the fifth clause of the will, which fifth clause is set forth in full in the statement of facts preceding this opinion. The bill alleged the partition of the said lands between

Mrs. Cheney and Mrs. Teese, and the fact that possession passed to said parties according to said allotment.  The bill then set forth the facts relative to the births and deaths of the children of the said Mrs. Cheney and Mrs. Teese, and that the appellant had inherited the interest in fee of two deceased children of himself and his said wife, and averred that "doubts have arisen as to the true construction of the will of the said E. A. D'Arcy as to the rights of the said Ann C. Teese and her children and as to the rights of complainant, P. D. Cheney, and his son, in the lands aforesaid, and the said Ann C. Teese claims, and by her husband, as her agent, acting for her and controlling said lands so allotted to her, gives out in speech, that the life estate created by the said will survives to her in the whole of said lands, as well those which have been so allotted and set apart to said Catherine as those set off to her, the said Ann C. Teese, who now claims under the will to hold and enjoy the whole of said land during her natural life, to the exclusion of your complainants."  The bill further alleged that doubts existed whether the life estate created under the will did or did not terminate as to both Mrs. Teese and Mrs. Cheney upon the death of the latter, and asked a construction of the will upon that point, and charged that if the life estate did so terminate, the complainants were entitled, under the will, to an absolute estate in fee in said lands, and prayed that if the court should decree that said life estate did so terminate, the court would decree partition of all the said lands of which the said D'Arcy died seized, between the said complainants, the appellant and his son, and the said Mary M. and Catherine M. Teese, according to their respective rights and interests in fee therein, accruing to them by force of the provisions of the said will, and that the court would appoint commissioners to make said partition.  Amendments were afterwards made to the bill, which need not be otherwise noticed except to say they were designed to make more clear and explicit

the claim of complainants to an interest in fee in the land in virtue of the will of his deceased wife's father.

The defendants to the bill made answer thereto, and the cause was submitted to the court and a decree entered, from which the appellant, P. D. Cheney, prosecuted an appeal to this court, resulting in a reversal of the said decree and a construction of the will by this court. (*Cheney* v. *Teese*, 108 Ill. 473.) The cause was remanded and such subsequent proceedings had therein in the circuit court as resulted in a decree of that court construing the said will according to the directions of the Supreme Court, and adjudging and decreeing said appellant, P. D. Cheney, and his co-complainant, were entitled to and were vested of title in fee simple to an undivided three-fifths interest in said land under said will.

The participation of the said appellant, Cheney, in the amicable allotment of the life estate of his wife, his entering into possession of the lands under her right thereto as a devisee of the will of her father, E. A. D'Arcy, and the allegations contained in the bill filed by him against the other devisees of the same will, unmistakably indicate that appellant, Cheney, upon the death of his father-in-law abandoned all thought or intent of complying with or insisting upon the performance of the conditions of the contract for the purchase of the land. We also find in the record a number of letters written by the appellant, Cheney, framed upon the theory the will disposed of the title to the land, and asserting claims and rights in his own behalf wholly based upon that theory. As before remarked, it seems to us indisputable that these contracts entered into between the deceased, D'Arcy, and his sons-in-law, Cheney and Teese, were regarded by all the parties thereto as but a mode adopted by D'Arcy of appropriating these lands to the use and benefit of his daughters and their husbands. After the death of D'Arcy it is clear his daughters and their husbands accepted the provisions of the will as the better and more satisfactory

manner of accomplishing that purpose, and they proceeded to carry into effect the conditions and terms of the will. We find nothing in the record to indicate that the appellant, Cheney, at any time before the purchase by the complainants of the interest of the Teese children in the land, intended to fulfill his contract with D'Arcy, or that he based any claim of interest or title upon that contract. His acts, during all the time after the death of the father of his wife until advised of the purchase of the interest of the Teese children by the complainants, are wholly irreconcilable with the view he was claiming any rights under said contract, and consistent only with the theory that the contract had been abandoned and the disposition made of the land by the will accepted and fully acquiesced in. Moreover, we think the appellant, Cheney, should be deemed estopped from asserting any rights under the contract by the decree of the court, rendered upon his own application, awarding and decreeing to him, as heir of his deceased children, an interest in the fee in the lands created in said children by the will. The decree was a public record, and it appeared in the proof that the complainants in the original bill, Ricks, Maxon and Provine, before they purchased from the Teese heirs, acquainted themselves with its contents, and relied upon it as setting forth truly the claim of interest of said Cheney. He cannot be allowed to shift his position to their injury and damage.

Whether time was of the essence of the contract,—a subject much discussed in the briefs,—need not, of course, have our attention if we are right in the view we have taken that the contract was abandoned. The decree dismissing the cross-bill of the appellant, and declaring the interests of complainants in the original bill and appellant as tenants in common, and appointing commissioners to make partition, meets our approval and is affirmed.

It appeared from the proof the complainants in the original bill had executed a mortgage to the Misses Teese

upon the 1920 acres of land in controversy to secure the payment of the sum of $25,000, unpaid balance of the purchase money, and it is complained the court erred in directing the course to be taken by the commissioners with reference to the lien of the mortgage in making the partition. The appellant also insists it appeared from the evidence that he expended large sums of money in making lasting and valuable improvements on the land, and that the decree of the court deprives him of all benefit of such outlays and expenditures. We treat these objections together, for the reason the chief ground of complaint urged is, that appellant had made lasting and valuable improvements on this land, and that to assign a portion of it to the complainants in the original bill would be to unjustly deprive him of the value of such improvements.

The decree directed the allotment of the 1920 acres described in the mortgage and herein in controversy, only on condition that such allotment did not interfere with a fair and equitable division and partition of the whole premises, and specifically directed the commissioners as follows: "It is further ordered and decreed by the court, that for the purpose of preserving the lien of said mortgage made by complainants to Mary M. and Catherine M. Teese on the lands in the mortgage described, the commissioners shall, if a fair and equitable partition of all of the lands first above described can be so made, first set off and allot to said Prentiss D. Cheney the three-fifths ($\frac{3}{5}$), and to said N. D. Ricks, George E. Maxon and W. M. Provine together the two-fifths ($\frac{2}{5}$), of sections numbered two (2), three (3), the north half of section ten (10) and the north half of section eleven (11), all in township eleven (11), north, range four (4), west of third principal meridian, quality and quantity relatively considered, and then set off and allot to the said Prentiss D. Cheney the three-fifths ($\frac{3}{5}$), and to the said Ricks, Maxon and Provine the two-fifths ($\frac{2}{5}$), of all the residue of the lands above de-

scribed, quality and quantity relatively considered; and so far as practicable, consistent with a fair and equitable partition, the commissioners shall set off to Prentiss D. Cheney the lands heretofore described as having been set off to Catherine M. Cheney, and set off to Ricks, Maxon and Provine the lands heretofore described as having been set off to Ann C. Teese by the deed of partition of the life estate in said lands, so that the lands upon which improvements have been made by Catherine M. Cheney and Prentiss D. Cheney may be set off to him, and the lands upon which improvements have been made by Ann C. Teese and said Ricks, Maxon and Provine may be set off to them, said Ricks, Maxon and Provine; and the improvements on the land, if so assigned, should not be considered as enhancing the value of the lands, but if lands shall be assigned to Ricks, Maxon and Provine upon which Catherine M. or P. D. Cheney have made improvements, or if land shall be assigned to P. D. Cheney upon which Ann C. Teese or Ricks, Maxon and Provine have made improvements, then such lands and such improvements thereon should together be considered and valued by the commissioners in making the partition. If, however, a fair and equitable division of all the lands first above described cannot be made by first dividing said sections 2, 3, the north half of sections 10 and 11, as aforesaid, then in that case the commissioners shall make division and partition of all the lands first above described, assigning to said Prentiss D. Cheney the three-fifths and to N. D. Ricks, George E. Maxon and W. M. Provine together the two-fifths ($\frac{2}{5}$) thereof, quality and quantity relatively considered, and so far as practicable, consistent with an equitable division, assign the said shares so that the parties can, respectively, have the lands upon which they, or those under whom they claim, have made improvements; and the value of the land so assigned should not be regarded as enhanced by the improvements thereon, but if lands with improvements

thereon shall be set off to the party who did not, and those under whom he or they claim did not make improvements, then such lands, together with the improvements thereon, should be considered and valued together by the commissioners in making the partition. If the commissioners shall find that said premises are not susceptible of division without manifest prejudice to the parties in interest, they shall value each piece or parcel separately; and they shall make report, under their hands and seals, to the court during the present or the next succeeding term thereof."

Complainants had, in truth, executed two mortgages, both of which were subsisting liens on different portions of the lands: One to Henry Davis mortgaged the undivided two-fifths of all the lands mentioned in the original bill, except the 1920 acres here in controversy, to secure the sum of $40,000 and interest; the other mortgaged to the Misses Teese the undivided two-fifths of the 1920 acres, to secure $25,000 and interest. The mortgagees in each mortgage were parties defendant. The appellant, Cheney, had made improvements on the land mortgaged to the Misses Teese, and the grantors of the complainants had made improvements on the other tracts. It is not suggested to us in what manner the decree is prejudicial to the rights of either of the parties with respect to such improvements. Their interests in this regard, so far as possible to do so, will be fully protected if the commissioners observe the directions of the court, and if they fail to do so, objections to their report will offer either party a remedy to right any wrong.

Sections 5 and 6 of chapter 106, of the Revised Statutes, entitled "Partition," clearly contemplate and make it necessary that a mortgagee shall be party to a partition proceeding. A mortgagee is a necessary party to a suit in partition. *Loomis* v. *Riley*, 24 Ill. 307.

It is required by the statute that the court, in partition proceedings, shall ascertain and declare the rights,

titles and interest of all the parties,—the petitioners as well as the defendants,—and shall give judgment according to the rights of the parties. (Rev. Stat. sec. 15, chap. 106.) It was incumbent, therefore, upon the court to declare and set forth in its decree the rights, titles and interest of the complainants, the appellant, Cheney, and the mortgagees, and it was equally important the decree should so direct the partition to be made as to conserve the interests and rights of all of them. The statute would operate to transfer the lien of the mortgages, respectively, and limit it to such tract or portions of tracts as should be assigned by the commissioners to the mortgagors, respectively. (Rev. Stat. sec. 24, chap. 106.) But if allotment in severalty should not be made of the premises described in either mortgage, the mortgage would attach to the whole undivided interest of the mortgagor in such tracts. *Vogle* v. *Brown,* 120 Ill. 338.

If the entire premises described in the mortgage given by the complainants to the Misses Teese (the 1920 acres in controversy) should be allotted to the appellant, Cheney, he would necessarily take such premises subject to the lien of the mortgage, which would be unjust to him. The court directed that the premises in that mortgage should be partitioned and assigned in severalty to appellant, Cheney, and the complainants, if such partition could be made without prejudice to the parties interested. If carried into execution the decree in this respect would not work injustice. But we conceive the court fell into error in directing the course to be pursued if such partition could not be made. The decree directs the commissioners, that "if, however, fair and equitable division of all the lands cannot be made by first dividing" the 1920 acres aforesaid, "then in that case the commissioners shall make division and partition of all the lands first above described, assigning to said Prentiss D. Cheney the three-fifths and to N. D. Ricks, George E. Maxon and W. M. Provine together the two-fifths ($\frac{2}{5}$) thereof, quality and

quantity relatively considered, and so far as practicable, consistent with an equitable division, assign the said shares so that the parties can, respectively, have the lands upon which they, or those under whom they claim, have made improvements; and the value of the lands so assigned should not be regarded as enhanced by the improvements thereon, but if lands with improvements thereon shall be set off to the party who did not, and those under whom he or they claim did not make improvements, then such lands, together with the improvements thereon, should be considered and valued together by the commissioners in making the partition."

It will be observed the mandate of the decree is, that if the 1920 acres are not susceptible of partition the commissioners shall allot and partition the whole premises, with reference only to quality, quantity and improvements made by the respective parties, the lien of the mortgages being wholly ignored. If unable to partition the 1920 acres, (considered as a distinct parcel,) the commissioners, following the orders of the court, would make partition of all the land without regard to the incumbrances upon the different parcels thereof. This might result in an award to appellant, Cheney, of all the lands included in the mortgage to the Misses Teese, in which event the statute would have no operation to transfer the lien of that mortgage from any of the tracts, and appellant would take them charged with the incumbrance of that mortgage. The statute in the respect under consideration only operates when the share of the mortgagor in the mortgaged premises is assigned to him in severalty. Then the lien of the mortgage attaches to such separate allotment, and by force of the statute is discharged as to the shares allotted to the co-tenant of the mortgagor. But this is only true when partition is made of the premises covered by the mortgage and the undivided interest of the mortgagor therein allotted to him in severalty. The decree should have treated the lands

in the respective mortgages as distinct parcels, and ordered partition of each parcel to be made among the owners thereof.

We think there is no force in the contention the court erred in not requiring the repayment to Cheney of certain amounts which he claims to have paid upon the contract between himself and E. A. D'Arcy. The contract was entered into in 1862. Cheney concedes none of the payments required by it to be made were made by him during a period of over twenty years. During this period of time, as we have seen from the proof and from his own testimony, he and his wife were holding possession of the land under right and claim as devisees under the will, and he, during all of that time, took no steps toward the fulfillment of his contract. At the November term, 1882, of the Christian circuit court,—more than twenty years after the execution of his contract and before any of the alleged payments were made,—he exhibited his bill in chancery in said court, and therein asserted in his own behalf interest and title wholly antagonistic to any claim under the contract, and consistent only with the theory that the contract was not in force. Afterwards, as he testified, he made some payments on the contract to Mrs. D'Arcy, as executrix of E. A. D'Arcy, and it is these sums which it is contended should have been ordered repaid. Mrs. D'Arcy removed from Illinois and became a resident of New Jersey in 1877,—about six years prior to the first of the alleged payments and near fourteen years after the death of her husband. She had, many years before her removal from Illinois, paid all claims against the estate of E. A. D'Arcy, distributed to the legatees the personal assets of the estate as directed by the will, and performed all the duties required of her by law as executrix, except that of making a final report. All of these facts were within the personal knowledge of appellant, Cheney, as appears from his testimony. Under such a state of circumstances we think any payments

made to Mrs. D'Arcy were wholly unauthorized, and without binding force as against the title of the devisees of the deceased testator. No reason is apparent to us why such devisees, or their assigns, should be required to contribute to a fund to be appropriated to the purpose of repaying to said appellant, Cheney, sums paid out by him under such circumstances.

It is, we think, well assigned as for error that the decree provided a reasonable solicitor's fee, to be paid to appellee W. M. Provine, should be taxed as costs, and paid by the parties in proportion as they were interested in the lands to be partitioned. The statute (sec. 4, chap. 106, entitled "Partition,") directs that in such proceedings "the court shall apportion the costs, including the reasonable solicitor's fee, among the parties in interest in the suit, so that each party shall pay his or her equitable portion thereof." The purpose of this enactment is to require each party in interest in the lands to be partitioned to contribute to the payment of all expenses legally attendant upon its prosecution. Here no expense was incurred to secure the services of a solicitor. One of the complainants was possessed of the requisite legal knowledge to enable him to present the case in court, and he did so present it. It was not intended by the statute to authorize one of the litigants in a partition proceeding to become his own client or to make the other parties to the proceeding his clients and charge them for professional services, but only to provide that the expenses of a solicitor, when it became necessary for the complainants to employ such assistance, should be ratably borne by all the parties in interest. In *Willard* v. *Bassett*, 27 Ill. 37, this court held that it was against the policy of the law to allow one to become his own client and charge for professional services in his own cause. In harmony with that doctrine it has been held that an attorney who is a mortgagee cannot recover professional fees for services rendered in a proceeding to foreclose a mortgage, though

a stipulation in the mortgage provided for the allowance of solicitor's fees. (*Slater* v. *Vattorn,* 3 Jur. (N. S.) 630; *Patterson* v. *Donner,* 48 Cal. 369.) The same principle is also recognized and upheld in *Martin* v. *Campbell,* 11 Rich. Eq. 205, *In re Sherwood,* 3 Beav. 338, and *Cochran* v. *Dennis,* 5 Denio, 482.

Error was committed in the allowance of solicitor's fees to the complainant Provine and in the directions given to the commissioners relative to their duties in making partition, and the decree in these respects is reversed but in all other respects it is affirmed. The cause will be remanded, with directions to the court to enter a decree directing the commissioners to proceed to partition the tracts covered by the mortgage to the Misses Teese, if the same remains undischarged, and the tracts covered by the mortgage to Davis, if the same remains undischarged, as distinct parcels, allotting to the appellant, Cheney, in severalty, three-fifths of each parcel and the complainants (jointly as between themselves), in severalty, two-fifths of each parcel, quantity and quality relatively considered, and shall direct said commissioners, as before, with reference to the allotment of tracts on which the respective parties have made improvements, provided a fair and just partition can be so made without manifest prejudice to the parties interested in the premises; but if the mortgages, or either of them, have been discharged, then partition should be ordered with reference to improvements, as in the decree appealed from, and otherwise according to the interests of the parties as required by the statute and as indicated in this opinion. Each party will pay one-half the costs in this court.

*Decree affirmed in part.*