# Illinois Official Reports

## Supreme Court

---

### *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487

---

| | |
|---|---|
| Caption in Supreme Court: | THE STATE OF ILLINOIS *ex rel.* SCHAD, DIAMOND & SHEDDEN, P.C., Appellant, v. MY PILLOW, INC., Appellee. |
| Docket No. | 122487 |
| Filed | September 20, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Thomas R. Mulroy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stephen B. Diamond, of Stephen B. Diamond, P.C., Tony Kim and Matthew Burns, of Kim & Burns LLP, David A. Genelly, of Vanasco, Genelly & Miller, and Michael W. Rathsack, all of Chicago, for appellant. |
| | Catherine A. Battin and Daniel R. Campbell, of McDermott Will & Emery LLP, of Chicago, for appellee. |
| | David S. Ruskin and David A. Hughes, of Horwood Marcus & Berk Chtrd., of Chicago, for *amicus curiae* Illinois Chamber of Commerce. |

Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Brett E. Legner, Deputy Solicitor General, of Chicago, of counsel), *amicus curiae*.

Justices

CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

Justice Neville took no part in the decision.

**OPINION**

¶ 1 This appeal presents a single issue: where the relator in a successful *qui tam* action brought against a corporation for the benefit of the State of Illinois under the Illinois False Claims Act (Act) (740 ILCS 175/1 *et seq.* (West 2012)) is a law firm, does section 4(d)(2) of the Act (*id.* § 4(d)(2)) entitle the firm to an award of both a reasonable amount "for collecting the civil penalty and damages" from the corporation on behalf of the State *and* an additional amount in attorney fees for the services performed by the firm's own lawyers for the same work? The Cook County circuit court concluded that it does and awarded the law firm not only a share of the proceeds for its efforts in collecting the penalty and damages from the corporation but also a substantial additional sum for attorney fees, expenses, and costs. The appellate court affirmed in part, reversed in part, and remanded. While it agreed that the law firm was entitled to an award of attorney fees for outside counsel it had retained, it held that the statute does not authorize an award of attorney fees for work done by the firm's own attorneys. It therefore sent the case back to the circuit court to recalculate the amount of fees the firm was entitled to recover. 2017 IL App (1st) 152668, ¶ 158. We allowed the law firm's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2017)) and granted leave to the Attorney General of the State of Illinois and the Illinois Chamber of Commerce to file friend of the court briefs in support of the defendant (Ill. S. Ct. R. 345 (eff. Sept. 20, 2010)). For the reasons that follow, we affirm the appellate court.

¶ 2 BACKGROUND

¶ 3 In July 2013, the law firm of Schad, Diamond and Shedden, P.C., subsequently known as Stephen B. Diamond, P.C. (Diamond), filed a *qui tam* action against My Pillow, Inc. (My Pillow), a Minnesota corporation, pursuant to the Act (740 ILCS 175/1 *et seq.* (West 2012)). Diamond amended its complaint a number of times, but the particulars of the revisions are unimportant. The gist of its claim was that My Pillow had "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decrease[d] an obligation to pay or transmit money or property to the state" in violation of section 3(a)(1)(G) of the Act. *Id.* § 3(a)(1)(G). More specifically, Diamond charged that My Pillow had failed to collect and remit to the State tax due under the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 2012)) and the Use

Tax Act (35 ILCS 105/1 *et seq.* (West 2012)) and had knowingly made false statements, kept false records, and avoided obligations in violation of both statutes. The law firm's Retailers' Occupation Tax Act allegations arose from the sale of My Pillow products at craft shows. Its Use Tax Act claims pertained to the company's sale of its products online and by phone.

¶ 4 While the Act authorizes the attorney general to bring a civil action against persons the attorney general has found to be in violation of section 3 of the Act (see 740 ILCS 175/4(a) (West 2012)), it also expressly permits such actions to be commenced by private parties, as this one was (see *id.* § 4(b)(1)). Where, as here, a private party initiates the action, the cause must be brought in the name of the State (*id.*), and the State must be served with a copy of the complaint and other documents (*id.* § 4(b)(2)). The State then has the right to intervene and take over the action. *Id.* If it elects not to proceed, the party who initiated the action has the right to conduct it, subject to certain ongoing rights of the State. *Id.* §§ 4(b)(4)(B), 4(c)(3). There is no dispute that the State received the requisite notice in this case and expressly elected not to proceed with the action itself, yielding the right to conduct the litigation to Diamond.

¶ 5 From filing of the complaint to final judgment, Diamond the relator was represented by Diamond the law firm. The complaint, which was amended several times, specifically identified the relator as "Shad, Diamond & Shedden, P.C.," initially and then, after the firm changed its name, as "Stephen B. Diamond, P.C. (f/k/a Schad, Diamond & Shedden, P.C.) *** a professional corporation located at 332 South Michigan Avenue, Suite 1000, Chicago, Illinois 60604." All subsequent pleadings in the case were filed by the firm itself, under that same name, using the law firm attorney code issued to it by the circuit clerk's office in Cook County.

¶ 6 In its complaint, Diamond alleged that it made the purchases of My Pillow products at craft shows, online, and by telephone. Exhibits attached to the complaint show the billing and shipping address for all but one of the online purchases as being that of Diamond's office. The lone sale not sent to the firm's office was shipped to attorney Stephen Diamond (Stephen), the firm's president. Pleadings and other documents filed in the case on behalf of Diamond bore Diamond's name and address, often without the signature of any individual attorney. Stephen and other attorneys from Diamond conducted depositions for Diamond. During the two-day bench trial, Stephen served not only as lead trial counsel for Diamond but also testified as a witness. Two other Diamond lawyers served similar dual roles, representing Diamond and also appearing as witnesses on its behalf. While an outside law firm also appeared as counsel of record for Diamond, its involvement in the case was extremely small. In every meaningful respect, Diamond represented itself.

¶ 7 At the conclusion of the bench trial, the circuit court issued a written decision, finding in favor of My Pillow and against Diamond on Diamond's Retailers' Occupation Tax Act claims, but in favor of Diamond and against My Pillow on Diamond's Use Tax Act claims. Following additional briefing and a hearing, the circuit court ordered My Pillow to pay $343,227 in damages and $225,500 in statutory penalties, for a total of $568,727. The court subsequently increased this award to $782,667. It also recognized that the litigation had resulted in My Pillow paying the State an additional $106,970 in use taxes it owed, bringing the total proceeds from the action to $889,637.

¶ 8 Pursuant to section 4(d)(2) of the Act (*id.* § 4(d)(2)), a private party bringing a successful claim under the Act is entitled to receive not less than 25% nor more than 30% of the proceeds

of the action to compensate it for recovering the money on behalf of the State. In this case, the circuit court made an award at the top end of the range, holding that My Pillow should pay 30% of the $889,637 in total proceeds, or $266,891, to Diamond with the balance to be paid directly to the State.

¶ 9    In addition to receiving 30% of the proceeds as compensation for its bringing the action against My Pillow on the State's behalf, Diamond asserted that, under section 4(d)(2) of the Act, My Pillow was also required to pay it "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." *Id.* Diamond submitted a lengthy fee petition in support of its claim. The total amount requested was $748,383. This sum included $29,499 in office, travel, and other expenses incurred by Diamond and $1094 it expended for purchases of My Pillow products; $4824 for what Diamond described as "common fees and expenses"; and $1800 in attorney fees Diamond paid to the law firm of Vanesco Genelly & Miller for 4.5 hours of work performed by that firm in connection with this litigation. By far the largest portion of the fee request, however, was $697,760 in attorney fees for work performed by Diamond itself in investigating and litigating this case and an additional $14,500 Diamond billed to draft the fee petition, an amount Diamond described as "substantially less than Relator's [(Diamond's)] actual fees of $22,644."

¶ 10    Diamond's request for $697,760 in attorney fees for its own work was supported by a voluminous and detailed printout showing the date the work was done, who did it, what their billable rate was, how many hours were worked, the total charge for each item, and a description of the service performed. It is clear from those entries that there was no differentiation between Diamond the relator and Diamond the law firm. Along with charges for legal research, drafting of documents, and court appearances were charges for scheduling visits to craft shows, attending the shows, purchasing My Pillow products, and checking credit card statements for My Pillow purchases. In addition, while individual lawyers with Diamond both conducted the trial and appeared as witnesses on Diamond's behalf, the attorney fee request made no distinction between these roles. Time spent making purchases and giving testimony was not separated out from time devoted to making legal arguments and examining witnesses. Every action taken in the case by Diamond, the relator, was also billed by Diamond, the law firm. It all involved the same work by the same people.

¶ 11    My Pillow objected to the fees sought by Diamond for work done by the firm's own attorneys on the grounds that the firm had proceeded *pro se* and that lawyers representing themselves are not entitled to statutory fee awards. My Pillow further argued that allowing Diamond to recover attorney fees for the work done by the firm's own lawyers in addition to the share of the award Diamond received as compensation for bringing the action against My Pillow would give the firm an impermissible windfall. In effect, Diamond would be paid twice for the same work. In addition, My Pillow contended that Diamond's fee request was excessive and unreasonable and included expense items that are normally included in office overhead, encompassed within the hourly rate the firm billed, and not properly compensable as a separate expense.

¶ 12    The circuit court found that Diamond was entitled to a reasonable award of its attorney fees, costs, and expenses, including attorney fees for work performed for the law firm's own lawyers, but it reduced the total number of hours for which they could be compensated. It

denied $17,106.21 in photocopying, binding, and scanning expenses and held that Diamond was not entitled to certain taxicab fees or fees the firm sought to reimburse it for the numerous products it had purchased from My Pillow when investigating the case. With these reductions, the total attorney fees, costs, and expenses awarded to Diamond amounted to $600,960. This sum was in addition to the $266,891 awarded to the law firm to compensate it for its efforts in recovering damages and penalties from My Pillow for the benefit of the State of Illinois.

¶ 13     My Pillow appealed the circuit court's judgment, arguing that the court had erred when it found that the company had violated the Act, that the court had miscalculated the amount of damages My Pillow was required to pay, and that the court should not have awarded Diamond attorney fees because the firm was proceeding *pro se* and *pro se* litigants cannot recover attorney fees for their own work. My Pillow further asserted, in the alternative, that the fee award was improper because it included charges for legal work done in connection with Diamond's unsuccessful claim related to the sale of My Pillow products at craft shows. 2017 IL App (1st) 152668, ¶ 33.

¶ 14     In a published opinion, the appellate court affirmed in part, reversed in part, and remanded for further proceedings. It upheld the damage award in full and ruled that the circuit court had not erred in awarding attorney fees for work related to the firm's craft fair claims. It held, however, that Diamond could not recover attorney fees for any of the work performed by the firm's *own* lawyers on *any* of the claims. The only attorney fees for which it was entitled to an award were those incurred by the outside counsel it had hired to assist it. The appellate court therefore remanded to the circuit court for recalculation of the attorney fee award consistent with that determination. *Id.* ¶ 158.

¶ 15     Diamond petitioned this court for leave to appeal, which we allowed. Ill. S. Ct. R. 315(a) (eff. July 1, 2017). The sole question presented is whether the appellate court erred when it held, contrary to the circuit court, that Diamond was not entitled to an award of attorney fees for work performed by the firm itself.

¶ 16                                           ANALYSIS

¶ 17     Illinois has long followed the "American rule" regarding the award of attorney fees. Under that rule, each party to litigation must normally bear its own litigation expenses, regardless of who won. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572 (2000). Prevailing parties are prohibited from recovering their attorney fees from the losing party absent express authorization by statute or by contract between the parties. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 64; *Henke v. Guzenhauser*, 195 Ill. 130, 135 (1902).

¶ 18     In this case, Diamond's claim for attorney fees is predicated on a statute, specifically, section 4(d)(2) of the Act (740 ILCS 175/4(d)(2) (West 2012)). Because they are in derogation of the common law, statutes such as section 4(d)(2) that allow for fee awards must be strictly construed. *Sandholm*, 2012 IL 111443, ¶ 64. Nothing is to be read into such statutes by intendment or implication. Even if a statute has remedial features, if it is in derogation of the common law, " 'it will be strictly construed when determining what persons come within its operation.' " *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 463 (2010) (quoting *In re W.W.*, 97 Ill. 2d 53, 57 (1983)). The construction of a statute presents a question of law (*McVey v. M.L.K. Enterprises, LLC*, 2015 IL 118143, ¶ 11), and to the extent an appeal from an award of attorney fees turns on issues of statutory construction, our review is *de novo*

(*In re Marriage of Nash*, 2012 IL App (1st) 113724, ¶ 15; *Trutin v. Adam*, 2016 IL App (1st) 142853, ¶ 30).

¶ 19    The fee-shifting provision of the Act provides:

"If the State does not proceed with an action under this Section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25% and not more than 30% of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant. The court may award amounts from the proceeds of an action or settlement that it considers appropriate to any governmental entity or program that has been adversely affected by a defendant. The Attorney General, if necessary, shall direct the State Treasurer to make a disbursement of funds as provided in court orders or settlement agreements." 740 ILCS 175/4(d)(2) (West 2012).

¶ 20    In the case before us, there is no question that the State elected not to bring an action under the Act itself. The action was initiated, instead, by Diamond, a law firm. Although the firm is organized as a professional service corporation, a corporate body is a "person" within the meaning of the Act. Such a construction comports with section 1.05 of the Statute on Statutes (5 ILCS 70/1.05 (West 2012)) and the ordinary and popularly understood meaning of the term (*M.S. Kind Associates, Inc. v. Mark Evan Products, Inc.*, 222 Ill. App. 3d 448, 450 (1991)), is not inconsistent with the manifest intent of the General Assembly or repugnant to the context of the statute (5 ILCS 70/1 (West 2012)), and is not disputed by the parties. Accordingly, under the clear and unambiguous terms of the Act, Diamond was entitled to receive a percentage of the amount My Pillow was found to owe in order to compensate the firm collecting that sum. It was likewise entitled to "receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 740 ILCS 175/4(d)(2) (West 2012).

¶ 21    The judgment entered by the circuit court in favor of Diamond and against My Pillow included an award of all of these items, including attorney fees. The problem, as the appellate court recognized, is that the circuit court awarded fees not only for services performed by the outside counsel hired by Diamond to help it bring the case—fees it was unquestionably entitled to receive—but also fees for the work done by the law firm itself in prosecuting its own claim. We agree with the appellate court that this was error.

¶ 22    More than 150 years ago, our court expressly rejected the notion that an attorney who represents himself or herself in a legal proceeding may charge a fee for professional services in prosecuting or defending the case. "To allow him to become his own client and charge for professional services in his own cause, although in a representative or trust capacity, would be holding out inducements for professional men to seek such representative place to increase their professional business, which would lead to most pernicious results. This is forbidden by every sound principle of professional morality as well as by the policy of the law." *Willard v. Bassett*, 27 Ill. 37, 38 (1861).

¶ 23    While notions of "professional morality" have evolved since the mid-nineteenth century, our court has continued to adhere to the principle that it is contrary to public policy of Illinois

to allow an attorney "to become his own client and charge for professional services in his own cause." *Cheney v. Ricks*, 168 Ill. 533, 549 (1897). This rule has not been limited to individual lawyers. It has also been extended to their law partners. *Stein v. Kaun*, 244 Ill. 32, 38 (1910) (where complainant in a case is a law partner of the attorney by whom the complainant is represented, the complainant may not recover an award of fees for the attorney's services if the fee award would be shared by their law firm).

¶ 24    The most complete modern pronouncement on the subject by our court was made in *Hamer v. Lentz*, 132 Ill. 2d 49 (1989). In that case, we expressly held that "[a] lawyer representing himself or herself simply does not incur legal fees." *Id.* at 62. To the extent that a lawyer elects to proceed *pro se* in a case for which the legislature has provided statutory authorization for an award of attorney fees, he or she therefore has no attorney fees to claim and is not entitled to an award of fees under the statute. *Id.* at 62-63. Although not binding on our construction of the Illinois statute at issue in this case (see *People v. Walker*, 211 Ill. 2d 317, 336 (2004)), the United States Supreme Court reached the same conclusion when applying a federal fee-shifting statute: a lawyer who represents himself or herself should be treated like any other *pro se* litigant and may not be awarded attorney fees for the work done by that lawyer on his or her own case. *Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991).

¶ 25    In *Hamer*, our court explained that there are several reasons why self-represented lawyers should be treated the same as any other *pro se* litigant when it comes to the award of attorney fees. First, where a fee-shifting statute is intended to remove a burden that might otherwise deter litigants from pursuing a legitimate action and was not meant to serve as a reward to successful plaintiffs or a punishment against the government, the rationale for the law is absent when a lawyer is self-represented. Because a *pro se* lawyer incurs no fees, fees present no barrier to the lawyer's ability to bring his or her cause of action. *Hamer*, 132 Ill. 2d at 62.

¶ 26    Fee-shifting statutes may also advance the goal of avoiding unnecessary litigation by encouraging citizens to seek legal advice before filing suit. Again, however, such objectivity is lacking—and this goal is therefore not advanced—when a litigant, lawyer or otherwise, represents himself or herself. *Id.* In addition, allowing attorneys to collect fees for representing themselves may engender abusive fee generation practices. The most effective way to deter such potential fee generation, we have held, "is to deny fees to lawyers representing themselves." *Id.* at 62-63.

¶ 27    *Hamer* involved the fee-shifting provisions of Illinois's Freedom of Information Act (FOIA) (Ill. Rev. Stat. 1987, ch. 116, ¶ 201 *et seq.*). *Hamer*, 132 Ill. 2d at 51. Over the nearly three decades since it was decided, it has been applied not only to FOIA cases but in numerous other contexts as well. See, *e.g.*, *Kehoe v. Saltarelli*, 337 Ill. App. 3d 669, 678 (2003) (attorney who appeared and defended himself in a malpractice action not entitled to an award of attorney fees); *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 117-18 (1990) (rule that attorneys appearing *pro se* are not entitled to collect attorney fees cited with approval in dissolution action); *In re Marriage of Tantiwongse*, 371 Ill. App. 3d 1161, 1164 (2007) (law firm not entitled to an award of attorney fees for work done by its own lawyers in collecting fees owed to the firm by a client); *Uptown People's Law Center v. Department of Corrections*, 2014 IL App (1st) 130161, ¶ 25 (not-for-profit legal organization that brought successful FOIA action not entitled to an award of attorney fees under FOIA for work performed by its own in-house, salaried lawyers in pursuing the organization's claim); *McCarthy v. Abraham Lincoln*

*Reynolds, III, 2006 Declaration of Living Trust*, 2018 IL App (1st) 162478, ¶¶ 28-32 (attorney who appeared and defended himself *pro se* in civil action not entitled to award of attorney fees as part of sanction imposed on plaintiff under Illinois Supreme Court Rule 137 (eff. July 1, 2013)).

¶ 28　　We agree with the appellate court that the line of precedent running through *Hamer* and its progeny leads directly to the case before us today and determines its outcome. To the extent that Diamond prosecuted its own claim using its own lawyers, the law firm was proceeding *pro se*. Under the foregoing authority, the firm was therefore not entitled to an award of attorney fees for the services those lawyers performed in prosecuting the law firm's claim.

¶ 29　　In challenging this conclusion, Diamond argues that the same policy considerations underlying *Hamer* and related precedent are not of concern under the circumstances presented by this case; that a different rule should apply where, as here, the fees are sought by an entity rather that an individual lawyer; and that affirmance of the appellate court's rejection of its fee request will imperil the ability of relators to pursue and obtain significant monetary recoveries for the benefit of the State. Diamond further contends that when the State brings an action itself under the Act, it is entitled to recover, as part of its litigation expenses, attorney fees incurred by the Attorney General in prosecuting the case. See 740 ILCS 175/4(a) (West 2012). If the State can be compensated for the work of the Attorney General, Diamond asserts, Diamond should be compensated for the work done by its lawyers. To hold otherwise, Diamond argues, is contrary to public policy as expressed by the General Assembly and impermissibly substitutes the court's judgment for that of the legislature.

¶ 30　　Diamond correctly points out that in *Kay*, 499 U.S. at 436 n.7, the United States Supreme Court recognized the possibility that an organizational plaintiff could obtain an award of attorney fees under a federal fee-shifting statute for work done on its behalf by its own in-house counsel because, unlike a self-represented individual litigant, "the organization is always represented by counsel, *** and thus, there is always an attorney-client relationship." In addition, various lower federal courts have subsequently held that law firms should be treated no differently than other types of organizational plaintiffs under *Kay* and should therefore likewise be entitled to recover attorney fees under federal fee-shifting statutes for legal work performed by attorneys who belong to or are employed by the firm when it has used those attorneys to prosecute or defend claims by or against the firm itself. 2017 IL App (1st) 152668, ¶¶ 114-123. We note, however, that the discussion of organizational plaintiffs in *Kay* was *dicta*, and the lower federal courts following that *dicta* have all involved federal statutes. Applying Illinois law, our appellate court has reached a contrary conclusion, holding that under the reasoning of *Hamer*, *Tantiwongse*, and related cases, an organizational plaintiff that sued to obtain access to public records using the services of its in-house counsel was not entitled to recover statutory fees. *Uptown People's Law Center*, 2014 IL App (1st) 130161, ¶ 25.

¶ 31　　Without reaching the general question of whether an entity could *ever* claim statutory attorney fees for work performed by its own in-house attorneys, we agree with the appellate court's conclusion that Diamond was not entitled to such an award here. That is so because in this case, there was nothing that could fairly be characterized as an attorney-client relationship from which an obligation or need to pay an attorney fee might arise. As suggested earlier in this disposition, there was no factual or legal distinction between Diamond the relator and

Diamond the law firm. They were one and the same. Their interests in the litigation were identical, and their contributions to the case were indistinguishable. When Diamond the law firm made a legal decision, it was not counseling a client. It was talking to itself.

¶ 32 The nature of the relationship between Diamond the relator and Diamond the law firm was not altered in any way by the fact that it was organized as a professional services corporation.[1] Diamond's corporate form was irrelevant. The salient point is that Diamond the relator and Diamond the law firm were composed of and acted through the very same lawyers. Every action those lawyers took on behalf of Diamond the relator, they took, simultaneously, on behalf of Diamond the law firm and vice versa. The lawyers may have switched hats depending on where they were in the course of these proceedings—traveling to craft shows, placing orders, drafting pleadings, testifying as witnesses, and questioning their colleagues or other witnesses at trial—but when it came time to submit their bills, they were one and the same and considered themselves as such. To the extent that Diamond retained outside counsel to assist it in bringing the case, it had every right to petition for fees to pay those lawyers. To the extent it decided to do the work itself, however, the same considerations were at work here as with any other *pro se* litigant, and Illinois's long-standing bar against awards of attorney fees to lawyers who represent themselves was fully applicable.

¶ 33 Diamond argues that *qui tam* actions present a special case because the Attorney General's power to intervene in and retain control of the litigation serves as a check against abusive fee generation by unscrupulous lawyers, one of several concerns we expressed in *Hamer*. See *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 512-13 (2005). The Attorney General, in her friend of the court brief, takes strenuous exception to Diamond's characterization of the role played by her office where, as here, it declines to intervene in a case. She asserts that, while her office may retain ultimate control over the litigation, the day-to-day right to conduct the case is ceded to the private litigant, the Attorney General plays no role in determining whether the relator's expenses are justified or reasonable, and the Attorney General therefore provides no guarantee against excessive or frivolous fee generation.

¶ 34 While we are inclined to agree with the Attorney General that her potential participation in a case being conducted by a private litigant is not a reliable check on abusive fee generation practices by that party, the real question before us is not what the law should permit but rather what the law, as written, does permit. As indicated earlier in this opinion, fee-shifting statutes are in derogation of the common law and must therefore be strictly construed when determining what persons come within their operation. Applying such a construction to section 4(d)(2) of the Act, we see nothing therein to suggest that when the General Assembly authorized recovery of "reasonable attorneys' fees and costs" in *qui tam* actions, it intended to change the established common-law rule in Illinois that litigants who choose to represent themselves rather than retain counsel incur no compensable attorney fees even if they are themselves lawyers and even if they have brought the action on behalf of their own law firm.

¶ 35 It is true, as Diamond points out, that when the State brings an action itself under the Act, it is entitled to recover, as part of its litigation expenses, attorney fees incurred by the Attorney General in prosecuting the case. See 740 ILCS 175/4(a) (West 2012). Contrary to Diamond's

---

[1]The professional services corporation form of organization provides law firms with tax and limited liability advantages of incorporation. *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 388 (2005), *overruled in part on other grounds*, *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 42.

belief, however, there is no inconsistency between that provision and the conclusion that Diamond the relator is not likewise entitled to an award of attorney fees for the work done by Diamond the law firm. The situations are fundamentally different. When a private litigant brings a false claims action, the award or settlement it receives if successful is intended to compensate for the costs of "collecting the civil penalty and damages." *Id.* § 4(d)(2). If the litigant has proceeded *pro se*, as happened here, awarding that litigant an additional sum in the form of attorney fees results in a double recovery. The litigant is paid twice for the very same thing. Illinois law does not permit such double recoveries, and nothing in the Act suggests that the legislature intended to depart from that rule. See *Sommese v. American Bank & Trust Co., N.A.*, 2017 IL App (1st) 160530, ¶ 21.

¶ 36    When the State itself brings the action, no issue of double recovery arises. In a successful action by the State, all of the damages and penalties it is awarded or receives in settlement constitute a financial remedy for the wrong done by the defendant and suffered by a governmental entity or program. See 740 ILCS 175/3(a)(1), 4(a) (West 2012). No part of it is compensation for the expense of collecting the award. Accordingly, allowing the State to also recover the reasonable expenses incurred by the Attorney General in bringing the action, including reasonable attorney fees and costs, merely helps make the government whole for the harm it sustained. In contrast to a case brought by a self-represented law firm or attorney, a separate award of fees does not result in the State being paid twice for the same costs.

¶ 37    In its arguments before our court, Diamond directs our attention to the significant revenues it has recovered for the State through this and numerous other actions it has brought under the Act. Those successes have doubtlessly benefitted the people of our State. They are not, however, justification for paying Diamond twice for the same work. Having elected to assume the dual role of litigant and lawyer, Diamond must be content with the percentage share of the award it was granted by the circuit court to compensate it for its efforts in collecting that sum. As would be the case with any other *pro se* litigant, the law does not permit it to claim an additional amount as attorney fees for the work it did itself. The appellate court was therefore correct when it reversed that portion of the circuit court's judgment awarding Diamond attorney fees for work it performed by the firm's own lawyers and remanded the cause for recalculation of the attorney fee award to include only fees for services performed by the firm's outside counsel.

¶ 38                                    CONCLUSION

¶ 39    For the foregoing reasons, the judgment of the appellate court is affirmed.

¶ 40    Affirmed.

¶ 41    JUSTICE NEVILLE took no part in the consideration or decision of this case.