FILED
United States Court of Appeals
Tenth Circuit

July 27, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CENTENNIAL ARCHAEOLOGY,
INC., a Colorado corporation,

        Plaintiff - Appellee,

    v.

AECOM, INC., a Delaware
corporation,

        Defendant - Appellant.

No. 11-8000

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 2:09-CV-00101-WFD)**

Andrea Richard, The Richard Law Firm, P.C., Jackson, Wyoming, for Defendant -
Appellant.

Donald I. Schultz, Schultz & Schultz LLP, Cheyenne, Wyoming, for Plaintiff -
Appellee.

Before **HARTZ**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

**HARTZ**, Circuit Judge.

      AECOM, Inc. hired Centennial Archaeology, Inc. to perform cultural-

resources survey work in connection with a wind-energy project. When AECOM

refused to pay Centennial for some of its work, Centennial brought suit against

AECOM in the United States District Court for the District of Wyoming. Centennial prevailed on several claims and the parties ultimately settled on appeal the issues raised with respect to the merits of the litigation. This appeal concerns the parties' dispute about the district court's postjudgment order requiring AECOM to pay Centennial $58,361.51 in attorney fees for misconduct in the course of discovery.

We have jurisdiction under 28 U.S.C. § 1291 and affirm. The magistrate judge and district court reasonably found that AECOM had frustrated the discovery process and stalled the resolution of this case. And the amount of the fee award was proper. In particular, Centennial was entitled to an award under Fed. R. Civ. P. 37 even though its attorneys were working for a fixed fee.

## I.    BACKGROUND

### A.    Events Leading to Litigation

Power Company of Wyoming (PCW) hired ENSR Corporation in 2008 to prepare an environmental-impact statement for a 1000-turbine wind-energy project south of Rawlins, Wyoming. ENSR and Centennial had previously entered into a written consulting-services agreement (the Consulting Agreement). AECOM later purchased ENSR, and under the Consulting Agreement it issued Centennial a $674,900 purchase order for work relating to the environmental-impact statement. Soon after beginning work on the project, however, Centennial notified AECOM that it was experiencing higher costs than anticipated. The

parties agreed that Centennial should complete its field work before submitting a request for a change order to increase the contract price, even though the Consulting Agreement apparently required advance approval of a change order. When Centennial submitted the request, AECOM forwarded it to PCW, but PCW refused to approve it. AECOM then issued a stop-work order and informed Centennial that it would not pay expenses exceeding the purchase-order price.

Centennial sued, claiming that it was entitled to payment for all work performed and costs incurred before AECOM issued the stop-work order because AECOM had waived the change-order requirement. It later added claims for tortious interference with prospective business relationships and trade disparagement. AECOM disclaimed liability for all but the purchase-order price and counterclaimed that Centennial had breached the Consulting Agreement in various respects, although it later voluntarily dismissed the counterclaims. The case was tried to a jury, which returned a verdict in Centennial's favor on its breach-of-contract claim and on one of its tortious-interference claims.

## B. Discovery Disputes

During pretrial proceedings Centennial and AECOM were repeatedly unable to resolve their discovery disputes without court intervention. Centennial filed three motions to compel discovery, two of which were followed by AECOM motions for protective orders. For the most part Centennial received its requested relief. We summarize the disputes.

### 1.    AECOM's Privilege Log and the April 12, 2010, Order

Centennial's first request for production sought records of certain AECOM internal communications.  AECOM produced some documents but refused to produce documents listed in a two-page privilege log as protected by the attorney-client privilege and the attorney-work-product doctrine.  Centennial's counsel sent a letter dated January 8, 2010, asking AECOM's counsel for a more detailed log and for reconsideration of the assertions of privilege.  AECOM's counsel revised the log but did not disclose additional documents, leading Centennial's counsel to write a second letter, dated February 16; and on March 1 Centennial filed a motion to compel AECOM to produce more than 200 emails.  AECOM opposed the motion and filed a motion for a protective order and a motion to strike the motion to compel because of Centennial's failure to confer on the matter.

After reviewing in camera the withheld emails, the magistrate judge granted Centennial's motion in part in an order on April 12 (the April 12 Order).  The judge ruled that no email listed as a "communication in anticipation of litigation" was protected by the work-product doctrine and ordered AECOM to produce those documents.  Aplt. App., Vol. I at 426.  Although the judge upheld most of AECOM's claims of attorney-client privilege, he rejected some and ordered AECOM to disclose those unprivileged emails.  On April 16 AECOM

produced a number of emails and filed a notice of compliance with the April 12 Order.

## 2. The April 27, 2010, Order

The parties also disagreed about the discoverability of evidence related to their previous interactions (course-of-dealing evidence) and the adequacy of AECOM's discovery responses. Centennial's initial disclosures listed nine occasions on which AECOM had paid Centennial without requiring advance approval of a change order, and a letter accompanying the disclosures asked AECOM to provide a list of any previous occasions when AECOM had refused to pay Centennial for lack of such advance approval. When AECOM failed to respond, Centennial sought the advance-approval information in its first and second discovery requests. AECOM objected to the requests on various grounds, including relevance, and filed a motion to exclude course-of-dealing evidence from trial. The district court effectively denied the motion in a March 23, 2010, order denying Centennial's motion for summary judgment, which stated that evidence of the parties' previous dealings was relevant to whether AECOM had waived the advance-approval requirement for change orders.

On March 26 Centennial filed a motion to compel production by AECOM of course-of-dealing evidence and to impose sanctions, including exclusion of any course-of-dealing evidence offered by AECOM. At the April 19 hearing on the motion, Centennial also made an oral request for attorney fees. On April 27 the

magistrate judge issued an order (the April 27 Order) that AECOM fully respond by May 11 or be precluded from offering course-of-dealing evidence. But he denied without prejudice the request to impose other sanctions or to award attorney fees, explaining (1) that evidentiary sanctions were not appropriate because postponement of the trial enabled AECOM to cure much of the prejudice to Centennial by now responding fully to discovery requests and (2) that he would not consider imposing attorney fees because AECOM had not been provided a reasonable opportunity to respond to Centennial's oral request.

AECOM appealed the magistrate judge's order shortly before its supplemental discovery responses were due. The district court affirmed, stating that the magistrate judge had "conducted a careful and thorough review of [AECOM's] discovery responses and the tortured discovery history in this case." *Id.*, Vol. II at 690. On May 11 AECOM filed a notice of compliance with the April 27 Order, representing that it had supplemented its responses "as directed by the Court." *Id.* at 527.

### 3. Leave to Amend, Expedited Discovery, and the June 9, 2010, Order

After AECOM produced several internal emails in response to the April 12 Order, Centennial moved on May 14, 2010, to amend its complaint, claiming that the emails revealed for the first time that AECOM had deliberately interfered with Centennial's ability to obtain other projects and that this information supported

several business-tort claims. Centennial also filed a motion for expedited discovery. AECOM opposed the amendment, arguing that Centennial had failed to offer a valid explanation for waiting until the eve of trial (trial had been rescheduled for June 22) to amend its complaint. On May 20 the magistrate judge found that AECOM had made it difficult for Centennial to obtain discovery, granted leave to amend, and ordered the parties to complete discovery on the new claims by June 15. AECOM appealed the magistrate judge's decision to the district court, but the district court affirmed.

On May 21 Centennial sought written discovery on its new claims, and proposed a deposition schedule to AECOM's counsel. But the parties could not reach agreement. On June 4 Centennial moved to compel discovery, and on June 4 and 5 AECOM filed a motion to continue the trial and five motions for protective orders opposing depositions noticed by Centennial.

On June 9 the district court granted Centennial's motion to compel and denied AECOM's motions for protective orders (the June 9 Order). On the same day, but in a separate order, the court denied AECOM's motion to continue. The June 9 Order required AECOM to cooperate in arranging depositions and to respond to Centennial's written discovery requests by June 11. It stated that AECOM and its counsel had created scheduling pressures by failing "to properly comply with discovery obligations throughout this case." Aplee. Supp. App., Vol. II at 2048.

## C. Centennial's Sanctions Motions

Centennial filed three pleadings seeking sanctions. The pleadings accused AECOM of violating both the April 12 and April 27 Orders and sought monetary and evidentiary sanctions for those violations and other discovery abuse. Of particular relevance to this appeal are Centennial's requests for attorney fees. It sought $52,870 for its counsel's work in (1) seeking "discovery by consultation and correspondence," Aplt. App., Vol. II at 719; (2) preparing (a) its March 1 motion to compel, (b) a reply brief in support of that motion, (c) an opposition to AECOM's motion for protective order, (d) its March 26 motion to impose sanctions and compel discovery, (e) a reply brief in support of that motion, (f) an opposition to AECOM's renewed motion to exclude evidence, (g) an opposition to AECOM's appeal to the district court of the April 27 Order, and (h) its motion for leave to amend the complaint; and (3) preparing for and attending the April 19 hearing on its March 26 motion. Centennial also sought $24,752.50 in attorney fees for expenses incurred as a result of AECOM's violation of the April 27 Order and for expenses in preparing, filing, and arguing (1) Centennial's June 4 motion to compel depositions, (2) the opposition to the five motions for protective order, (3) the opposition to AECOM's motion to continue, and (4) Centennial's second sanctions motion.

## D. The District Court's Sanctions Order

-8-

The district court entered judgment on October 15, 2010, after the jury returned a verdict in Centennial's favor on its breach-of-contract claim and on one of its tortious-interference claims. On December 3 the court granted Centennial's motions for sanctions. It found that AECOM had violated both the April 12 Order and the April 27 Order. Because it also found that each of Centennial's motions to compel had resulted in either compliance with the discovery request or an order to compel, it said that Centennial was entitled under Fed. R. Civ. P. 37(a)(5)(A) to attorney fees incurred in making the motions. According to the court, "[AECOM's] pattern of obstructive discovery behavior ha[d] been pervasive and persistent throughout the entire course of written discovery and detrimental to the function of the judicial process," and had "evinced a cavalier disregard for [Centennial's] rights, the Rules of Civil Procedure governing discovery, and Orders of this Court seeking to enforce those rules." Aplt. App., Vol. II at 1402–03. Because of "[t]he willfulness of the discovery misconduct, coupled with the prejudice to [Centennial]," the court awarded attorney fees to Centennial. *Id.* at 1404. The court reviewed Centennial's accounting of the hours expended on activities required to obtain the needed discovery, and concluded that the hours were reasonable. But it adjusted the two attorneys' hourly rates of $375 and $275 down to $250 each, resulting in an award of $58,361.51.

AECOM's principal argument on appeal is that Centennial's fixed-fee arrangement with its counsel precludes an award of attorney fees. It also perfunctorily raises a number of meritless issues that we dispose of summarily.

## II. DISCUSSION

Fed. R. Civ. P. 37 contains two separate provisions that allow, and often require, the district court to award attorney fees for discovery misconduct. Under Rule 37(a)(5) the district court must ordinarily order a party to pay the opposing party's reasonable expenses, including attorney fees, incurred in filing or opposing a discovery motion if the opposing party's discovery motion is granted, the party provided discovery only after a motion to compel was filed, or the party's discovery motion was denied. *See* Fed. R. Civ. P. 37(a)(5)(A), (B); *id.* 26(c)(3). Rule 37(b) requires the district court ordinarily to order a party that has failed to obey a discovery order "to pay the reasonable expenses, including attorney's fees, caused by the failure." *Id.* 37(b)(2)(C). The district court's sanctions order awarded attorney fees under both provisions. It did not, however, specify how much of the award fell under Rule 37(a) and how much under Rule 37(b).

We review for abuse of discretion the district court's decision to award Rule 37 attorney fees and the amount of the award. *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236–37 (10th Cir. 1998). We review underlying

factual findings for clear error. *See id.* at 1237. With these standards in mind, we consider AECOM's arguments on appeal.

## A. Fixed-Fee Arrangement

Under Rule 37 the district court may award the prevailing party in a discovery dispute the "[party's] reasonable expenses incurred . . . , including attorney's fees" in making or opposing a discovery motion, Fed. R. Civ. P. 37(a)(5)(A), (B), or "the reasonable expenses, including attorney's fees, caused by the failure" to obey a discovery order, *id.* 37(b)(2)(C). AECOM argues that it should not have to pay an attorney-fee award because none of the actions for which it was sanctioned increased the amount that Centennial had to pay its attorney. Centennial had originally agreed to pay its counsel by the hour, and paid over $11,000 in fees under that arrangement; but Centennial and its counsel later modified the agreement so that Centennial would pay a fixed fee of $50,000 for all work after June 1, 2009. All discovery motions were filed after June 1, 2009. Thus, says AECOM, no attorney fees were either "incurred in making [a] motion," *id.* 37(a)(5)(A), or "caused by [a] failure" of AECOM to comply with a court order, *id.* 37(b)(2)(C). We disagree.

In fee-shifting statutes the term *attorney fees* (or its equivalent) has become a term of art. In common usage an attorney fee is what one pays to or owes one's attorney. In other words, it is the amount *incurred* by a client for the attorney's services. The literal language of fee-shifting statutes is consistent with this

-11-

usage. For example, the fee-shifting statute for civil-rights actions, enacted in 1976, provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Because the statute declares the fee to be a "cost," the natural reading would be that the fee should be treated the same as other costs, which are "limited to actual outlays or obligations," *Neil v. Honeywell Inc.*, 191 F.3d 827, 833 (7th Cir. 1999). Indeed, the statute governing verification of bills of costs, which has been in effect since 1948, states: "Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit . . . that such item is correct and has been *necessarily incurred* in the case." 28 U.S.C. § 1924 (emphasis added). A reader limited to considering only the statutory language in isolation would conclude that the "attorney fee" recoverable by a prevailing party under § 1988 is limited to what the party owes or has paid ("necessarily incurred").

That statutory interpretation, however, would be contrary to Supreme Court precedent. To give but one example, in *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court considered a fee award under § 1988 to a prevailing plaintiff represented by the Legal Aid Society of New York. The district court had awarded attorney fees based on prevailing market rates for the work performed by the Society. The defendant and the Solicitor General argued that reimbursement at such rates created a windfall and subsidized the Society because "market rates

incorporate operating expenses that may exceed the expenses of nonprofit legal services organizations, and include an element of profit unnecessary to attract nonprofit counsel." *Id.* at 893. The Court rejected the argument. Relying on legislative history, it said that "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." *Id.* at 894. Perhaps more striking, the Court did not even concern itself with the pro bono nature of the services provided and the plaintiff's having no actual outlays or obligations for attorney fees. Although the attorney-fee award is to the party, not the lawyers, the Court presumed that the award would ultimately go to the Society.

*Blum* is but one of countless examples that the courts construe the term *attorney fees* to mean, not the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party. As stated in *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989), "[A] 'reasonable attorney's fee' [is] reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the [party], no more and no less." In other words, an "attorney fee" arises when a party uses an attorney, regardless of whether the attorney charges the party a fee; and the amount of the fee is the reasonable value of the attorney's services. The payment arrangement for an attorney can vary widely—hourly rate, flat rate, salary, contingency fee, pro

bono.  What the client pays or owes the attorney may not accurately reflect the reasonable value of the services.

This interpretation of *attorney fees* is "an interpretation of [a fee-shifting] statute that is reasonable, consistent, and faithful to its apparent purpose."  *Id*. at 100 (Scalia, J., concurring).  As we understand it, that purpose—generally shared by fee-shifting statutes and rules—is to protect and further legal rights by removing a disincentive to vindicating those rights (namely, the cost of retaining attorneys to pursue the rights) and creating a disincentive to violating them or failing to compensate victims for violations (namely, the cost of paying for the victims' attorneys).  *See id.* at 93 ("the purpose of § 1988 was to make sure that competent counsel was available to civil rights plaintiffs"); *cf. Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (discovery sanctions "deter those who might be tempted to [sanctionable] conduct in the absence of such a deterrent" (internal quotation marks omitted)).

The Supreme Court has treated in the same manner attorney fees under the Civil Rights Act, 42 U.S.C. § 1988, *see Blanchard*, 489 U.S. at 88–90 (affirming fee above amount owed under contingency-fee arrangement), and under the Clean Air Act, 42 U.S.C. § 7604(d) (permitting court to "award costs of litigation (including reasonable attorney fees . . .) to any party"), *see Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 568 (1986) (using lodestar method to calculate attorney-fee award).  And the courts of appeals have done

likewise under various other statutes. *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, Nos. 11-5012, 11-5681, 11-6033, 2012 WL 1889306 (6th Cir. May 25, 2012) (Equal Access to Justice Act; contingency fee); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 641 (7th Cir. 2011) (Title VII; contingency fee); *Murkeldove v. Astrue*, 635 F.3d 784, 791 (5th Cir. 2011) (Equal Access to Justice Act; contingency fee); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1337 (11th Cir. 2001) (Lanham Act; below-market hourly rate); *Raney v. Fed. Bureau of Prisons*, 222 F.3d 927, 929 (Fed. Cir. 2000) (en banc) (Back Pay Act; union staff counsel); *Gotro v. R & B Realty Grp.*, 69 F.3d 1485, 1487–88 (9th Cir. 1995) (removal statute; contingency fee); *Kean v. Stone*, 966 F.2d 119, 120 (3d Cir. 1992) (Merit System Protection Board; salaried union counsel); *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3882 v. FLRA*, 944 F.2d 922, 923 (D.C. Cir. 1991) (Back Pay Act; union staff counsel); *Cornella v. Schweiker*, 728 F.2d 978, 985–87 (8th Cir. 1984) (Equal Access to Justice Act; pro bono legal organization); *Jordan v. U.S. Dep't of Justice*, 691 F.2d 514, 523–24 (D.C. Cir. 1982) (Freedom of Information Act; unpaid law students). *But cf. Assessment Techs. of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 438–39 (7th Cir. 2004) (in copyright case, award of fees to prevailing party could not exceed fixed fee set in attorney-client contract).

We see no reason to impose a different construction on the language of Rule 37—either the language of Rule 37(a)(5)(A) and (B) ("reasonable expenses incurred in making [or opposing] the motion, including attorney's fees") or that of

Rule 37(b)(2)(C) ("reasonable expenses, including attorney's fees, caused by the failure [to obey an order]").  As stated in the 1970 advisory committee's note to Rule 37(a)(4):

> [T]he rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists.  And the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery.

The purpose of Rule 37 attorney-fee sanctions would be thwarted if a party could escape the sanction whenever opposing counsel's compensation is unaffected by the abuse, as when the fee arrangement is a contingency fee or, as here, a flat rate.  *See Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1394–97 (7th Cir. 1983) (permitting attorney-fee award for work of salaried in-house counsel caused by opposing party's willful abuse of the judicial process); *Dixon v. Comm'r*, 132 T.C. 55, 101 (T.C. 2009) (sanction for fraud on the court included attorney fee for work by pro bono counsel).  Although we agree that in the usual case, "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay," *Assessment Techs.*, 361 F.3d at 438, we refuse to assume that Centennial believed that extra efforts by its attorney caused by AECOM's violations of rules and orders were worthless.  The fixed-fee arrangement was undoubtedly based on the assumption by both attorney and client that the attorney would be performing typical services in litigation conducted under the governing

-16-

law. The fixed fee is irrelevant to the value of the services performed because of AECOM's misconduct.

We recognize that on a few occasions circuit courts have indicated that when a fee-shifting statute allows recovery only for attorney fees "incurred" by a party (as in Rule 37(a)(5) but not Rule 37(b)(2)(C)), the party must actually have paid or owe the fee to qualify for reimbursement. *See, e.g.*, *In re Espy*, 338 F.3d 1036, 1038–39 (D.C. Cir. 2003) (Ethics in Government Act); *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 366–68 (7th Cir. 2000) (28 U.S.C. § 1447(c)—removal statute); *Marre v. United States*, 38 F.3d 823, 828–29 (5th Cir. 1994) (26 U.S.C. § 7430(c)(1)(B)(iii)—tax statute). But even though some, or all, of those cases may have been correctly decided because of the purposes served by the particular fee-shifting statute at issue, we disagree with the reliance on the word *incurred*.

First, as previously noted, the adjective *incurred* adds nothing (except, perhaps, emphasis) when modifying the term *attorney fee*, because in common usage a fee is something incurred. Thus, although the Supreme Court has never squarely stated that the inclusion of the word *incurred* in a fee-shifting statute does not affect when a fee is recoverable, it has repeatedly inserted the word *incurred* in its description of the meaning of fee-shifting statutes that do not contain the word. In the recent decision in *Fox v. Vice*, 131 S. Ct. 2205 (2011), the Court interpreted the frequently litigated civil-rights fee-shifting statute, 42 U.S.C. § 1988 (in which the word *incurred* does not appear), as permitting an

-17-

award to a defendant "for costs that the defendant would not have *incurred* but for . . . frivolous claims," *id.* at 2211 (emphasis added), while requiring the defendant to pay "for the attorney's fees that the plaintiff reasonably *incurred* in remedying a breach of his civil rights," *id.* at 2214 (emphasis added).  In *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291 (2006), the Court similarly interpreted the fee-shifting provision of the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(3)(B), which does not contain any version of the word *incur*, as "simply add[ing] reasonable attorney's fees *incurred* by prevailing parents to the list of costs that prevailing parents are otherwise entitled to recover."  *Id.* at 297 (emphasis added).  Likewise, in *Missouri v. Jenkins*, 491 U.S. 274 (1989), the Court held that an attorney-fee award against a State under § 1988 did not violate the Eleventh Amendment because the award "constituted reimbursement of expenses *incurred* in litigation seeking only prospective relief."  *Id.* at 278 (emphasis added, internal quotation marks omitted).  And the Court has even described two fee-shifting statutes—one with and one without the word *incurred*—as using "virtually identical language." *Astrue v. Ratliff*, 130 S. Ct. 2521, 2529 (2010) (referring to § 1988 and the Equal Access to Justice Act provision, 28 U.S.C. § 2412(d)(1)(A)).

Second, and we think dispositively, the fee-shifting statutes that one might wish to distinguish because they do not use the word *incurred* generally provide that such fees are to be awarded as costs; and a party is not entitled to recover a

-18-

cost without submitting an affidavit that it was "necessarily incurred." 28 U.S.C. § 1924.

This is not to say that all fee-shifting statutes must be interpreted identically. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (holding that under the Copyright Act fee-shifting statute, 17 U.S.C. § 505, defendants and plaintiffs are to be treated the same, contrary to the Court's interpretation of § 1988). But in interpreting such statutes, courts should look to their statutory purposes rather than focusing on the inclusion of a word (*incurred*) that, in ordinary usage, would be read into the statute in any event. In light of the clear purposes of the fee-shifting provisions of Rule 37, we believe that Centennial is entitled to an attorney-fee award even though its lawyers were working under a fixed fee. *See Ed. A. Wilson, Inc. v. Gen. Servs. Admin.*, 126 F.3d 1406, 1408–11 (Fed. Cir. 1997) (Equal Access to Justice Act; awarding fee when insurer paid the fee even though statute limited award to "expenses *incurred by* [*the*] *party*" (internal quotation marks omitted)).

## B.    Arguments Disposed of Summarily

### 1.    Criminal Sanctions

Centennial's motion for sanctions relied only on Rule 37 as ground for the sanctions; and the district court cited only that Rule in support of its award. AECOM argues on appeal, however, that the district court's angry comments, its award of fees for attorney work other than gathering information, and the timing

of the award (five months after trial) all show that the award was really a sanction for criminal contempt. Because the procedures for criminal contempt were not followed, it contends that the sanctions order should be reversed. AECOM relies on *Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1438 (10th Cir. 1998). In that case we reversed an order imposing a noncompensatory monetary sanction for a discovery violation, stating that the noncompensatory sanction was a criminal-contempt order.

We reject AECOM's argument. *Law*, whatever its merits, is not apposite because the award here was undoubtedly intended to be compensatory. The record is clear that the sanction was imposed under Rule 37. Of course, if AECOM could show that the court did not follow proper procedures under that Rule or imposed sanctions not permitted by the Rule, it may obtain relief. But, as we hold in this opinion, it has failed to make such a showing.

### 2. Timeliness and Necessity of Centennial's Motions to Compel

AECOM argues that the district court erred in awarding sanctions because Centennial's motions to compel were untimely. The argument is colorable because the discovery deadline was December 18, 2009, yet Centennial did not file its motions to compel until March 2010, when trial was set for April 26. Ordinarily, however, we defer to the discretion of the district court in deciding whether a motion is too tardy to be considered. *See Norton v. City of Marietta*,

-20-

432 F.3d 1145, 1156 (10th Cir. 2005) (per curiam) (district court had discretion to deny motion to compel as untimely); *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) ("The district court has discretion to consider an untimely motion to compel if the movant offers an acceptable explanation for the motion's tardiness." (brackets and internal quotation marks omitted)). We see no abuse of discretion here. As the district court stated, neither it nor the Federal Rules set a deadline to move to compel and Centennial had delayed filing a motion as it sought voluntary compliance from AECOM.

AECOM also argues that Centennial's motion to compel was unnecessary because AECOM had agreed to provide the requested documents without a court order and Centennial already possessed the information that it sought. But the magistrate judge rejected the first argument, finding that AECOM had failed to meet the agreement's deadline and that its later attempt to respond to Centennial's discovery request was inadequate. AECOM did not challenge that finding in its opening brief. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (appellant abandons arguments not made in opening brief). And AECOM's second argument is likewise meritless. As the magistrate judge recognized, Centennial had a right to request any course-of-dealing evidence that AECOM possessed, even if it would prove to be duplicative of information in Centennial's

possession. We therefore reject the arguments that Centennial's motion was unnecessary.

### 3. Privileged Status of AECOM's Internal Emails

AECOM argues that the district court should not have awarded sanctions based on AECOM's failure to produce its internal emails because the withheld emails were privileged. It contends that the magistrate judge was wrong to conclude otherwise and that the district court was wrong to accept the magistrate judge's erroneous conclusion.

We reject this claim of error because the issue is not properly before us. AECOM did not appeal to the district court the magistrate judge's order finding the emails not privileged, so the issue is waived. *See Pippinger v. Rubin*, 129 F.3d 519, 533–34 (10th Cir. 1997); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992). Moreover, AECOM has not provided a sufficient record on appeal for review of its argument. Although scores of emails were at issue, the sole evidence that AECOM presents consists of two pages of emails on which only a few words survived redaction. *See In re City of New York*, 607 F.3d 923, 948 (2d Cir. 2010) ("To assess both the applicability of the privilege and the need for the documents, the district court must ordinarily review the documents in question."); *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998) ("The party seeking to invoke the attorney-client privilege has the burden of establishing its applicability. To satisfy this burden, it is insufficient for the

-22-

[party invoking privilege] merely to contend that documents contain privileged information." (citation omitted)).

### 4. Compliance with April 12 and April 27 Orders

AECOM argues that because it never violated either of the discovery orders of April 12 and April 27, the district court erred in awarding fees under Rule 37. We reject the argument.

To begin with, AECOM violated the April 12 Order. Its brief admits as much when it acknowledges that it failed to produce an email until May 20, after Centennial had twice brought the error to AECOM's attention. Moreover, even though the email may not have been particularly important, AECOM has not shown that any part of the fee award was based on a violation of the April 12 Order, and Centennial's counsel at oral argument claimed that the missing email was not a basis for any attorney fees. AECOM has shown no basis for relief on this ground.

As for the April 27 Order, it required that AECOM "fully and adequately respond to" Centennial's discovery requests by May 11, 2010. Aplt. App., Vol. I at 496. Although AECOM did timely supplement its discovery responses, the district court found the responses incomplete and inadequate. AECOM's opening brief provides no response to the district court's specific findings except to argue that it had not improperly delayed production of notes taken by assistant project manager Mark Degner. AECOM now suggests that the notes were properly

withheld as privileged; but its argument below was only that "Degner's notes were inadvertently not produced." *Id.*, Vol. II at 1036. AECOM provides no reason for this court to consider an argument not raised below. *See Carpenter v. Boeing Co.*, 456 F.3d 1183, 1198 n.2 (10th Cir. 2006) ("[O]ur general rule is not to address arguments that were not first presented to the district court."). We also reject AECOM's argument that Degner's notes were not covered by the April 27 Order. The district court found that the notes were responsive to Centennial's first document request, and the April 27 Order required AECOM to supplement fully its discovery disclosures. AECOM presents no argument to the contrary.

### 5.     Centennial's Motion to Amend and AECOM's Motion to Continue the Trial

AECOM contends that the district court's sanctions order was improperly based on AECOM's resistance to Centennial's amendment to the complaint, its belief that AECOM's attorney had misrepresented that she had a scheduling conflict, and its displeasure with AECOM's June motion to continue the trial. We disagree.

The portions of the record referenced by AECOM do not support its contention that the district court imposed a sanction for AECOM's opposing Centennial's amendment to its complaint. Nor have we found support elsewhere in the record. Also, the record does not support the contention that the court believed that AECOM's attorney had misrepresented a scheduling conflict. After

counsel told the court that she had a conflicting trial setting in state court, the district court contacted the state judge, who said that another trial had priority so the potential conflict would not materialize.

As for AECOM's motion to continue, the district court's sanction included Centennial's attorney fees to oppose the motion because the court characterized the motion as "in effect a motion for a stay of or to delay [ongoing] discovery." Aplt. App., Vol. II at 1399. AECOM's opening brief does not challenge that characterization. And the characterization is on its face reasonable because the court had previously made it clear that the trial date was set in concrete and the motion to continue was filed as AECOM was obstructing discovery necessary for Centennial to be prepared for that trial date. The continuance motion was apparently designed solely to relieve AECOM of its burden to comply with its discovery obligations.

### 6.     Miscellaneous Inadequately Presented Arguments

AECOM argues that the district court abused its discretion by imposing both evidentiary and monetary sanctions. But AECOM's opening brief fails to point to anything in the record supporting its claim that the district court imposed evidentiary sanctions. In any event, nothing in Rule 37 precludes a district court from imposing both evidentiary and monetary sanctions. *See* Fed. R. Civ. P. 37(b)(2)(C) (payment of expenses is required "[i]nstead of or in addition to" the sanctions enumerated in Rule 37(b), which include evidentiary sanctions).

AECOM asserts that the district court "awarded substantial fees for numerous tasks that were not related to discovery or . . . supposed violations of the [discovery orders]," and therefore were not permissible under Rule 37. Aplt. Br. at 38. In support of this assertion it cites, without any further explanation, five pages of the appendix, each of which is a page from Centennial's billing records containing multiple entries. This "effort" by AECOM does not suffice to present any issue for review in this court. A party cannot impose on the court the burden to search for error. We have no obligation or inclination to examine each entry and assess, without any guidance from AECOM, whether it reflects work compensable under Rule 37. *See Reedy*, 660 F.3d at 1275 ("Issues not adequately briefed will not be considered on appeal.").

AECOM contends that the district court should not have awarded fees because Centennial failed to confer on the issues. But the magistrate judge's April 27 Order found that Centennial "ha[d] made multiple good faith attempts to get [AECOM] to adequately respond to its discovery requests" and that "[AECOM] ha[d] hindered those attempts at every turn." Aplt. App., Vol. I at 487. The record supports the finding and AECOM's brief does not even attempt to point to contrary evidence or otherwise to rebut the judge's findings.

AECOM's opening brief also asserts that its failure to admit matters in response to a request for admissions "cannot be used as a basis for the District

Court's sanctions on June 17, 2010." Aplt. Br. at 36. But the brief fails to identify a sanction imposed on that date, and we have found none.

### C.    Motion to Supplement the Record

AECOM has filed a motion with this court seeking to file a supplemental appendix. We deny the motion because every document in the proposed supplemental appendix is either a duplicate of a document already contained in the record or was never presented to the district court.

## III.    CONCLUSION

We AFFIRM the district court's order awarding attorney fees.