*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-1101

NGOZIKA J. NWANERI, APPELLANT,

v.

QUINN EMANUEL URQUHART & SULLIVAN, LLP, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-3686-18)

(Hon. Fern Flanagan Saddler, Trial Judge)

(Submitted September 22, 2020                    Decided May 20, 2021)

*Ngozika J. Nwaneri*, pro se.

*Keith H. Forst* and *Florentina D. Field* were on the brief for appellee.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

Opinion for the court by *Associate Judge* MCLEESE.

Opinion concurring in part and dissenting in part by *Associate Judge* EASTERLY at page 17.

MCLEESE, *Associate Judge*: Appellant Dr. Ngozika J. Nwaneri challenges orders (1) confirming an arbitration award against Dr. Nwaneri and in favor of appellee Quinn Emanuel Urquhart & Sullivan, LLP; and (2) ordering Dr. Nwaneri

to pay Quinn Emanuel additional attorney's fees arising from the proceedings in Superior Court to confirm the arbitral award as well as from removal proceedings in federal district court. We affirm.

## I.

Except as noted, the following facts appear to be undisputed. Quinn Emanuel represented Dr. Nwaneri in a lawsuit but later withdrew from that representation. A dispute arose about the payment of attorney's fees to Quinn Emanuel for the representation, and the matter went to arbitration.

On January 12, 2018, after a hearing, a panel of arbitrators from JAMS (an organization that provides arbitration services) issued an award of approximately $90,000 in favor of Quinn Emanuel. On February 5, 2018, Dr. Nwaneri, who was represented by counsel during the arbitration, submitted to JAMS what Dr. Nwaneri labeled a motion to appeal. That submission challenged the arbitral award on the merits and offered to introduce additional evidence. The next day, JAMS informed Dr. Nwaneri that the arbitration did not include an appellate process and that the arbitration was therefore closed.

On May 24, 2018, Quinn Emanuel filed a motion in Superior Court to confirm the arbitral award. After briefing and argument by the parties, the Superior Court concluded that Dr. Nwaneri had failed to timely move to modify, correct, or vacate the award. The trial court therefore granted Quinn Emanuel's motion to confirm the award.

Quinn Emanuel then filed a motion for additional attorney's fees arising from the proceedings to confirm the arbitral award. Dr. Nwaneri did not file an opposition, and the Superior Court awarded additional fees of approximately $50,000.

In April 2019, Dr. Nwaneri removed the case to federal court. The District Court for the District of Columbia promptly remanded the case to Superior Court, concluding that the removal was "patently improper." The District Court also ordered Dr. Nwaneri to pay Quinn Emanuel's costs and expenses, including attorney's fees. The district court left calculation of the amount of attorney's fees to the Superior Court.

Following the remand from the district court, the Superior Court ordered Dr. Nwaneri to pay approximately $23,000 in attorney's fees arising from the removal

proceedings. In calculating that amount, the Superior Court reduced the hourly rate claimed by Quinn Emanuel, instead applying the so-called *Laffey* matrix to determine the hourly rate. *See generally Tenants of 710 Jefferson St., NW v. District of Columbia Rental Hous. Comm'n*, 123 A.3d 170, 182 (D.C. 2015) (*Laffey* matrix is an annually updated "fee schedule of hourly rates for attorneys practicing in the District of Columbia," based on years of experience).

## II.

We turn first to Dr. Nwaneri's challenge to the order confirming the arbitral award. We review such a ruling de novo. *Fairman v. District of Columbia*, 934 A.2d 438, 442 (D.C. 2007). We see no error in the trial court's ruling in this case.

A party to an arbitration may move for a court order confirming an arbitral award, and "the court *shall* issue a confirming order unless the award is modified or corrected pursuant to [D.C. Code] § 16-4420 or 16-4424 or is vacated pursuant to § 16-4423." D.C. Code § 16-4422 (2012 Repl.) (emphasis added). As the trial court correctly concluded, § 16-4422 by its terms required confirmation of the arbitral award unless one of the three statutory exceptions applied. We agree with the trial court that none of the three exceptions applied in this case.

First, D.C. Code § 16-4420 (2012 Repl.) authorizes a party to ask an arbitrator to modify or correct an arbitral award for certain specific reasons: (1) the award reflected an evident mathematical miscalculation, an evidently mistaken description, or an imperfection of form not affecting the merits of the arbitral decision; (2) because the award did not finally determine all claims submitted for arbitration; or (3) to clarify the award. *Id.* (referring to D.C. Code § 16-4424(a)(1), (3) (2012 Repl.)). That provision was not applicable in this case, for two reasons. Dr. Nwaneri's "appeal" to JAMS was not a request to modify or correct the arbitral award for any of the reasons listed in § 16-4420. Rather, it was a direct challenge to the merits of the arbitral award. In any event, JAMS declined to consider the appeal, and the arbitral award thus was not corrected or modified in any way. The first exception in § 16-4422 therefore did not apply, because it is applicable only if the arbitrator actually modifies or corrects the award.

Second, the latter two exceptions involve §§ 16-4423 and -4424, which permit a court to modify, correct, or vacate an arbitral award. Both of those provisions, however, ordinarily require that a motion seeking such relief be filed within ninety days after the movant receives notice of the award. D.C. Code §§ 16-4423(c), -4424(a). It is undisputed that Dr. Nwaneri received notice of the

award on January 22, 2018, and his opposition to the motion to confirm was not filed until July 26, 2018, well after that deadline. *See generally, e.g.*, *Walter A. Brown, Inc. v. Moylan*, 509 A.2d 98, 100 (D.C. 1986) (by failing to file timely motion to vacate arbitral award, and instead filing opposition to motion to confirm after ninety-day deadline ran, party "waived any right to challenge the award"; discussing predecessor arbitration statute).

For the first time in this court, Dr. Nwaneri argues that he is a "consumer" within the meaning of D.C. Code §§ 16-4401(3) (2012 Repl.) and -4424(d), and that he therefore was entitled to move to vacate the arbitral award within thirty days after receiving Quinn Emanuel's motion to confirm the award. Quinn Emanuel contends that Dr. Nwaneri does not qualify as a consumer, but also argues that this court should not consider Dr. Nwaneri's belated argument. Following our ordinary practice, we decline to consider this issue. *See, e.g.*, *Hollins v. Fed. Nat'l Mortg. Ass'n*, 760 A.2d 563, 574 (D.C. 2000) ("[W]e ordinarily do not consider issues raised for the first time on appeal . . . .").

In sum, we affirm the trial court's order confirming the arbitral award on the ground that Dr. Nwaneri failed to bring a timely challenge to the award. We therefore have no occasion to address Dr. Nwaneri's many challenges to the

underlying arbitral award. Relatedly, Dr. Nwaneri raises numerous procedural objections to the trial court's ruling. We see no basis for relief on procedural grounds, particularly given that the trial court's ruling was required as a matter of law.

## III.

We next turn to the trial court's order awarding Quinn Emanuel attorney's fees arising from the proceedings to confirm the arbitral award. We see no abuse of discretion. *See generally, e.g.*, *Lively v. Flexible Packaging Ass'n*, 930 A.2d 984, 988 (D.C. 2007) (setting aside attorney's fee award requires "a very strong showing of abuse of discretion").

D.C. Code § 16-4425(c) (2012 Repl.) authorizes the trial court to award reasonable attorney's fees to the prevailing party in a proceeding to confirm an arbitral award. Dr. Nwaneri argues, however, that Quinn Emanuel is not entitled to such fees because Quinn Emmanuel was represented by its own attorneys. We disagree.

Dr. Nwaneri relies on *Kay v. Ehrler*, in which the Supreme Court held that a pro se attorney could not recover attorney's fees pursuant to 42 U.S.C. § 1988, a statute providing for such fees in certain actions to enforce civil rights. 499 U.S. 432, 437-38 (1991). We have followed *Kay*. *See, e.g.*, *Upson v. Wallace*, 3 A.3d 1148, 1168 (D.C. 2010) (pro se attorney is not entitled to an award of attorney's fees pursuant to Super. Ct. Dom. Rel. R. 11). This case differs from *Kay* and *Upson*, however, in an important respect: Quinn Emanuel is a law firm, not a solo attorney handling a matter pro se.

In explaining its holding in *Kay*, the Supreme Court focused on the disadvantages of a single individual serving as both client and counsel. 499 U.S. at 437 (retention of independent counsel in civil-rights cases furthers congressional goal of "ensuring the effective prosecution of meritorious claims"). The Supreme Court concluded that

> [e]ven a skilled lawyer who represents himself is at a disadvantage in contested litigation. Ethical considerations may make it inappropriate for him to appear as a witness. He is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and . . . making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom. The adage that "a lawyer who represents himself has a fool for a

client" is the product of years of experience by seasoned litigators.

*Id.* at 437-38 (footnote omitted). The Supreme Court also signaled in dictum that the analysis might well be different if an organization was involved. *Id.* at 436 n.7 ("However, an organization is not comparable to a *pro se* litigant, because the organization is always represented by counsel, whether in-house or *pro bono*, and thus there is always an attorney-client relationship.").

Relying on the Supreme Court's reasoning in *Kay*, a number of courts have held, under various statutes, that law firms can recover attorney's fees when they are represented by a member or employee of the firm. *See, e.g., Treasurer, Trs. of Drury Indus., Inc. Health Care Plan & Tr. v. Goding*, 692 F.3d 888, 898 (8th Cir. 2012) (noting that there is attorney-client relationship between self-represented law firm and particular firm attorney who is representing firm; citing cases); *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 325 (D.C. Cir. 2006) (although law-firm member may be "interested in the affairs of the entity, [the member] would not be so emotionally involved in the issues of the case so as to distort the rationality and competence that comes from independent representation") (internal quotation marks omitted). We are persuaded by those decisions, and we reach the same conclusion in the context of the fee provision in D.C. Code § 16-4425(c).

We acknowledge that the out-of-jurisdiction authorities are not uniform. Although the conclusion we reach appears to be consistent with the holdings of every federal court of appeals to have addressed the issue, *see Goding*, 692 F.3d at 898, there is contrary authority. *See, e.g.*, *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 115 N.E.3d 923, 930-31 (Ill. 2018) (in context of Illinois False Claims Act, relator law firm could not recover attorney's fees for work done by member attorneys); *Fraser Trebilcock Davis & Dunlap PC v. Boyce Tr. 2350*, 870 N.W.2d 494, 497-501 (Mich. 2015) (under Michigan law, self-represented law firm could not recover attorney's fees based on work done by its own members, because members did not charge firm on fee basis and were not sufficiently distinct from firm); *Munger Chadwick, P.L.C. v. Farwest Dev. & Const. of the Sw., LLC*, 329 P.3d 229, 232 (Ariz. Ct. App. 2014) (rule barring award of attorney's fees to pro se lawyers applies to law firms; allowing law firms to obtain fees where sole practitioners could not "would be inequitable"); *Newman & Cahn, LLP v. Sharp*, 388 F. Supp. 2d 115, 119 (E.D.N.Y. 2005) (law firm represented by its own attorneys cannot recover attorney's fees); *Swanson & Setzke, Chtd. v. Henning*, 774 P.2d 909, 912, 913 n.3 (Idaho Ct. App. 1989) (holding that law firm could not recover attorney's fees in suit against former clients; availability of attorney's fees "should

not turn on distinctions among proprietorships, partnerships, corporations or other modes of law practice").

We are not persuaded by these authorities. Some lack any substantial analysis. *E.g.*, *Newman*, 388 F. Supp. 2d at 119. Others appear to turn in significant part on particular statutory provisions or principles of state law that, as we will explain, appear to differ from our law. *E.g.*, *State ex rel. Schad*, 115 N.E.3d at 929-33 (relying on idea that self-represented firm does not "incur fees" and discussing purposes of Illinois False Claims Act, court limited holding to context of case, "[w]ithout reaching the general question of whether an entity could *ever* claim statutory attorney fees for work performed by its own in-house attorneys"); *Fraser*, 870 N.W.2d at 499, 501 (under prior Michigan case law, availability of award of attorney's fees turned on whether firm and particular attorney "enjoyed separate identities as attorney and client for the purposes of th[e] litigation" sufficient to give rise to agency relationship; court found no such relationship in circumstances of case, but declined to determine generally "[w]hether and in what circumstances a law firm may recover fees for representation provided to it by in-house counsel").

We pause briefly to discuss two related issues not directly raised by Dr. Nwaneri: whether a fee award under D.C. Code § 16-4425(c) requires that

attorney's fees have been "incurred"; and, if so, whether a self-represented law firm can be said to "incur" fees. Section 16-4425(c) provides for an award of "reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding" to confirm an arbitral award. Although the wording of § 16-4425(c) is arguably not entirely clear on the point, we assume without deciding that the phrase "incurred in a judicial proceeding" modifies both "reasonable attorney's fees" and "other reasonable expenses of litigation." We conclude, however, that a self-represented law firm can properly be viewed as having "incurred" fees for purposes of § 16-4425(c).

We addressed a closely related issue in *Saxon v. Zirkle*, 97 A.3d 568, 574-77 (D.C. 2014). In that case, we held that guardians ad litem appointed pro bono could be awarded fees under Super. Ct. Dom. Rel. R. 11(c)(3), which permits an award of attorney's fees "incurred" in responding to a frivolous or "bad faith" motion. *Id.* We acknowledged that an earlier decision of ours contained language suggesting "that a paying attorney-client relationship is necessary to support an award of attorney's fees under Domestic Relations Rule 11." *Id.* at 577 (citing *Upson v. Wallace*, 3 A.3d 1148 (D.C. 2010)). We concluded, however, that *Upson* was not "controlling." *Id.* We noted that *Upson* was distinguishable because, among other things, *Upson* involved an individual pro se attorney. *Id.* We further explained that

a broad reading of *Upson* "would be contrary to prior decisions of this and other courts." *Id.* Finally, we cited with approval decisions of other courts treating fees as having been incurred even in the absence of a specific arrangement between the attorney and the client for the payment of fees. *Id.* (citing, *e.g.*, *Centennial Archeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 678-82 (10th Cir. 2012) ("[T]he term 'attorney fees' means, not the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party.") (brackets and ellipses omitted)). For these reasons, we conclude in this case that the use of the term "incurred" in § 16-4425(c) does not preclude fee awards to self-represented law firms. We acknowledge that our decision in *Saxon* also relied in part on policy considerations, relating both to pro bono representation and to guardians ad litem, that are not applicable in the present case. 97 A.3d at 574-77. In our view, however, the applicable reasoning in *Saxon*, *Kay*, and the decisions of federal courts of appeals applying *Kay*, taken together, supports the conclusion that reasonable attorney's fees are available in the current setting.

In sum, we hold that a self-represented law firm is eligible to recover reasonable attorney's fees under D.C. Code § 16-4425(c). We note, however, that we have no occasion to consider (because Dr. Nwaneri understandably has not raised the issue as to Quinn Emanuel) whether at some point a firm might be so small as to

raise concerns about self-representation such as those animating *Kay*. *See Baker & Hostetler LLP*, 473 F.3d at 328 n.3 (Henderson, J., dissenting in part) (questioning whether self-represented single-member law firm could properly be awarded attorney's fees).

We agree with a number of points in the concurring and dissenting opinion. We respectfully differ, however, on several points. First, our holding in this case does not result in a "special rule just for law firms." *Post* at 17. Rather, our holding would logically apply to other organizational litigants as well. Second, we disagree that the Supreme Court's statement in *Kay* about the differences between individual and organizational litigants was "tailored to the particular statute at issue." *Id.* at 20. The Supreme Court's statement about those differences is worded in general terms. As we have noted, federal courts have relied on that statement in a number of different statutory contexts. *Supra* at 9. Third, the concurring and dissenting opinion appears to take the view that *Upson* should be read broadly to apply without regard to the factual distinction between *Upson* and this case, whereas *Kay* and *Saxon* should be read narrowly as limited to the specific context of those cases. Our decision in *Saxon* has already declined to read *Upson* as being broadly applicable to cases presenting materially different circumstances. *Saxon*, 97 A.3d at 577. We take the same approach in this case.

To the extent that Dr. Nwaneri otherwise challenges the reasonableness of the fee award relating to this stage of the proceedings, we see no abuse of discretion.

**IV.**

Finally, we also see no abuse of discretion in the trial court's award of attorney's fees related to Dr. Nwaneri's removal of this action to federal court. The question whether to award fees related to the removal was not before the Superior Court, and it is not before this court. Rather, the federal district court concluded that Dr. Nwaneri's removal of the case was improper and that an award of fees was warranted. The United States Court of Appeals for the District of Columbia Circuit has since dismissed Dr. Nwaneri's appeal of that order. *Quinn Emanuel Urquhart & Sullivan v. Nwaneri*, No. 19-7067 (D.C. Cir. Apr. 22, 2020). Because this issue was fully litigated and decided by the federal courts, Dr. Nwaneri may not relitigate it here. *E.g.*, *Thornton v. Little Sisters of the Poor*, 380 A.2d 593, 595 (D.C. 1977) (per curiam).

All that remained for the Superior Court was to ensure that the amount awarded was reasonable, and we conclude that the Superior Court did not abuse its

discretion in doing so. The Superior Court carefully reviewed Quinn Emanuel's proposed fees related to the removal, found them to be excessive, and instead applied the *Laffey* matrix to calculate appropriate rates of compensation. Although application of the *Laffey* matrix to calculate attorney's fees is not required in any particular case, *Laffey* matrix rates are presumptively reasonable. *Tenants of 710 Jefferson St., NW*, 123 A.3d at 186. There was no abuse of discretion in the trial court's considered application of the *Laffey* matrix here.

## V.

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*

EASTERLY, *Associate Judge*, concurring in part and dissenting in part: I join the majority opinion affirming the confirmation of the arbitral award. In light of this court's precedent holding that individual pro se lawyers are ineligible to receive an attorney's fee award where the authorizing provision requires that the fees be "incurred" in the context of a paying attorney-client relationship, however, I dissent from the majority opinion's holding that a law firm is eligible to receive attorney's fees under D.C. Code § 16-4425(c) (2012 Repl.). Were we writing on a blank slate, I would hold that, when attorney's fee awards are authorized by statute for fees that have been "incurred" in a judicial proceeding, all attorneys, whether operating solo or as part of a law firm, are eligible to receive such awards to compensate them for the lost opportunity to represent other clients. But given the current state of the law disallowing fees for individual pro se attorneys, I disagree that we can or should carve out a special rule just for law firms.

"The first step in construing a statute is to read [its] language . . . and construe its words according to their ordinary sense and plain meaning." *In re Settles*, 218 A.3d 235, 238 (D.C. 2019) (internal quotation marks omitted). Section 16-4425(c) provides:

> On application of a prevailing party to a contested judicial proceeding [relating to the confirmation, vacatur, or modification or correction of arbitral awards] the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding

> after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

Arguably, this language does not authorize an award of attorney's fees to a pro se litigant because such a litigant has not "incurred" any fees, having opted not to hire outside counsel. This was the conclusion our court reached in *Upson v. Wallace*, 3 A.3d 1148, 1168 (D.C. 2010).

*Upson* concerned an appeal in a custody dispute, where the defendant was a licensed attorney and represented himself. 3 A.3d at 1151. The pro se attorney sought sanctions under the Superior Court Domestic Relations Rule 11, which authorized the issuance of "an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee." *Id.* at 1165 & n.33. We explained fees were not authorized:

> Super. Ct. Dom. Rel. R. 11, by its plain language, allows for the reimbursement of expenses and attorney's fees that have been *incurred*, not for the reimbursement of an opportunity cost suffered by a *pro se* attorney litigant. The rule presupposes a paying attorney-client relationship, not the loss of income that a *pro se* litigant, whether an attorney or not, will experience due to the time and effort expended in defending against a frivolous lawsuit.

*Upson*, 3 A.3d at 1167 (footnote omitted).  In addition to citing to decisions from other state courts endorsing this understanding of "incurred,"[1] the court relied on the Supreme Court's decision in *Kay v. Ehrler*, 499 U.S. 432, 437–38 (1991) (interpreting the attorney's fee award provision under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988) and this court's decision in *McReady v. Dep't of Consumer & Regulatory Affairs*, 618 A.2d 609, 612 (D.C. 1992) (holding pro se attorney is ineligible for attorney's fees under the District of Columbia Freedom of Information Act).  *See Upson*, 3 A.3d at 1167–68.  From these two cases, the court discerned a rationale that "the retention of independent and objective counsel can reduce the likelihood of frivolous claims in litigation."  *Id.* at 1168.[2] The court concluded this rationale further supported precluding pro se attorney litigants from receiving attorney's fee awards under Rule 11.  *Id.*

---

[1] *See Musaelian v. Adams*, 198 P.3d 560, 564 (Cal. 2009) ("[T]he phrase 'expenses incurred' contemplates an obligation that a party has become liable to pay. [The rule] does not provide for compensation for time lost from other employment."); *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 983 A.2d 604, 625 (N.J. Super. Ct. App. Div. 2009) ("If a person, other than a lawyer, such as a doctor, plumber, or unskilled laborer, is the subject of frivolous litigation, appears *pro se,* and succeeds in convincing the court that his adversary has acted in a frivolous fashion, the court cannot, under the rule, reimburse the doctor, the plumber, or the unskilled laborer, the income he did not receive from his job.").

[2] *But see Kay*, 499 U.S. at 437 (explaining Congress enacted 42 U.S.C. § 1988 to "ensur[e] the effective prosecution of meritorious [civil rights] claims" and was not "primarily" motivated by "the desirability of filtering out meritless claims").

The majority opinion distinguishes *Upson* because the party seeking fees in this case "is a law firm, not a solo attorney handling a matter pro se." *Ante* at 8. But nothing in *Upson*'s analysis suggested that that fact matters. Whether the pro se litigant is an individual attorney or a law firm, it is still the case that no "paying attorney-client relationship" exists. *Upson*, 3 A.3d at 1167. And it is hard to argue that the attorneys at a firm who have a direct financial interest in that entity (either because they are partners who share in the firm's earnings directly or counsel who receive salaries and bonuses from the firm) are significantly more "independent and objective" than an individual attorney representing himself.

Instead of *Upson*, the majority opinion relies on acknowledged dictum in a footnote in the Supreme Court's decision in *Kay*. It is a thin reed. That footnote, which our court did not cite in *Upson*, was tailored to the particular statute at issue, 42 U.S.C. § 1988. In support of his argument that he was entitled to an attorney's fee award, the pro se attorney in *Kay* highlighted the legislative history of 42 U.S.C. § 1988. He argued Congress enacted this statute in direct response to a Supreme Court decision denying attorney's fees to self-represented advocacy groups and that Congress had expressly noted that civil rights organizations represented by in-house counsel were eligible to receive attorney's fees. Brief for Petitioner at 7–8, *Kay v. Ehrler*, 499 U.S. 432 (1991), 1990 WL 505483 (citing H. R. Rep. No. 1558, 94th

Cong., 2d Sess., 8 n.16 (1976) ("A prevailing party is entitled to counsel fees even if represented by an organization or if the party is itself an organization.")). He then argued that there should be no distinction between an individual attorney and an organization proceeding pro se. *Id.* at 8. In response, the Supreme Court did not dispute that 42 U.S.C. § 1988 was specifically intended to authorize attorney's fee awards to pro se organizations, but concluded that "an organization is not comparable to a *pro se* litigant because the organization is always represented by counsel, whether in-house or *pro bono*, and thus, there is always an attorney-client relationship." *Kay*, 499 U.S. at 436 n.7. Unlike in *Kay*, where the legislative history indicated that Congress recognized the role public interest organizations played in enforcing civil rights, the legislative history of D.C. Code § 16-4425(c) does not indicate that the Council of the District of Columbia actively desired pro se organizations to be eligible for attorney's fees in proceedings involving arbitration awards, *see* D.C. Council, Report on Bill 17-50 at 10 (June 4, 2007); thus we have no obvious justification for cabining our prior determination in *Upson* that attorney's fee awards are only "incurred" in the context of a paying attorney-client relationship.[3]

---

[3] As the majority opinion notes, a number of federal appellate courts, relying on *Kay*, have issued decisions upholding attorney's fee awards to law firms proceeding pro se. *Ante* at 9–10. But in none of these cases were the courts impeded by prior precedent, like *Upson*, holding that a litigant must incur fees in a paying

To support its holding that "a self-represented law firm can properly be viewed as having 'incurred' fees for purposes of § 16-4425(c)," the majority opinion also relies on *Saxon v. Zirkle*, 97 A.3d 568, 574–77 (D.C. 2014). But *Saxon* is distinguishable from *Upson* and this case. To support our determination that "the role of attorney [guardians ad litem] . . . [is not] comparable to that of a pro se attorney," and thus GALs are eligible for attorney's fee awards, we gave three reasons: (1) GALs do not represent themselves but rather a child's best interests; (2) GALs have to be attorneys, so allowing them to receive attorney's fee awards would not create the same anomaly as allowing pro se attorneys but not pro se lay litigants to be eligible to receive attorney's fees; and (3) *Upson* sought to discourage pro se litigation, even by attorneys, a "rationale [that] has no application to attorney

---

attorney-client relationship to be eligible for an attorney's fee award. Given that they were decided against a different legal landscape, they are largely unhelpful.

More persuasive precedent comes from state courts that, like us, previously held that pro se individual attorneys are ineligible to receive attorney's fee awards and then extended that rule to law firms. *See, e.g.*, *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 115 N.E.3d 923, 929, 929–30 (Ill. 2018) (relying on precedent establishing "that a lawyer representing himself or herself simply does not incur legal fees" to hold that a self-represented law firm is "not entitled to an award of attorney fees for the services [its own] lawyers performed in prosecuting the law firm's claim" (internal quotation marks and brackets omitted)); *Munger Chadwick, P.L.C. v. Farwest Dev. & Constr. of the Sw., LLC*, 329 P.3d 229, 232 (Ariz. Ct. App. 2014) (holding "that the rule forbidding an award of attorney fees when a party represents itself [applies] to law firms," though declining to "address the wisdom of the rule denying attorney fees to those attorneys who devote their time and expertise to representing themselves").

GALs in custody cases." *Id*. at 575. None of these rationales support the majority opinion's holding that a law firm incurs attorney's fees when it represents itself, whereas a solo attorney representing herself, per *Upson*, does not.

The opinion quotes *Saxon* for the proposition that "a broad reading of *Upson* 'would be contrary to prior decisions of this and other courts.'" But this quote is taken out of context. After the court concluded that GALs are eligible to receive attorney's fee awards, the court separately addressed Ms. Saxon's argument "that the award of attorney's fees resulted in a windfall . . . , because the GALs were appointed [to represent the child's interests] without compensation." *Id.* at 576. "[R]ecogniz[ing] . . . language in *Upson*, [that] suggests that a paying attorney-client relationship is necessary to support an award of attorney's fees under Domestic Relations Rule 11," we declined to "read[] *Upson* to broadly foreclose fee awards in cases involving *pro bono representation* under provisions that refer to fees having been 'incurred,'" as doing so "would be contrary to prior decisions of this and other courts." *Id*. at 577 (emphasis added). The cases we cited upheld payment of attorney's fees to attorneys who had represented their clients for free, on a volunteer basis, or for a fixed fee; none of them concerned a pro se litigant. In other words, the "broad reading of *Upson*" we rejected in *Saxon* relates to an entirely different issue.

I cannot critique my colleagues for wanting to limit the reach of *Upson*. Its holding that attorneys who represent themselves are ineligible to receive attorney's fee awards is hardly intuitive. The court reasoned in *Upson* that the language of Superior Court Domestic Relations Rule 11 "presupposes a paying attorney-client relationship," 3 A.3d at 1167, but all the rule (like the statute in this case) said was that the fees must be "incurred." *Id.* at 1165 n.33. An individual who chooses not to pay another to do work they are educated and licensed to do themselves nonetheless incurs her own fees in the form of the lost opportunity cost to represent other clients. *See McReady*, 618 A.2d at 624 (Ferren, J., dissenting). The court also suggested that the pro se attorney and the pro se layperson were indistinguishable. 3 A.3d at 1167–68. But it makes sense that the latter group would not be included in a provision that authorizes "attorney's fees" since they, being neither educated nor licensed in the law, are not "attorneys."

Further, the court's reliance in *Upson*—a case where a *defendant* was seeking attorney's fees—on *Kay* and *McReady*—cases where a pro se civil rights plaintiff and a FOIA plaintiff, respectively, were seeking fees—is questionable. As the Supreme Court in *Kay* explained, the "specific purpose" of the attorney's fee statute in that case "was to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." 499 U.S. at 436; *see also supra* note 2. But that

is clearly not the objective of a sanctions provision like Domestic Relations Rule 11, especially not when the sanctions are sought, as in *Upson*, by the defendant.

Law firms representing themselves pro se should be eligible for attorney's fee awards under D.C. Code § 16-4425(c). Individual pro se attorneys should also be eligible for fee awards under this provision. But *Upson* is an obstacle to both of these propositions. Because I disagree that there is sufficient justification for carving out a special rule for pro se law firms, and creating an asymmetry between individual and institutional litigants, en banc review is the only solution.